(No. 49322

KEYSTONE STEEL & WIRE COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION et al.—(Rufus Alexander, Appellee.)

*Opinion filed October 6, 1978.*

476

Robert E. Maciorowski, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

Timothy F. Sullivan, of Horwitz, Anesi, Osmon & Associates, of Chicago (Sidney Z. Karasik, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

This is a direct appeal from the circuit court of Cook County (58 Ill. 2d R. 302(a)), which confirmed an award by the Industrial Commission to the claimant, Rufus Alexander, who was injured in the course of his employment with Keystone Steel & Wire Co. (hereafter Keystone). The arbitrator, having found timely notice and

sustention of accidental injuries, concluded the claimant was entitled to $78 per week for 323 weeks, $6 for one week, and thereafter an annual pension of $3,024 for the claimant's "complete disability" making him "wholly and permanently incapable of work." The arbitrator further concluded that the claimant should receive $5,488.81 as compensation, which had accrued since the date of the injury, and $40 "for necessary medical services." The Commission affirmed.

Keystone raises three issues. It contends that the Commission's finding of total and permanent disability and occupational hernia was against the manifest weight of the evidence; that the claimant failed to give Keystone notice within 15 days after the accident as is required in cases of hernia; and that Keystone was not liable for the $40 in medical services because the claimant elected to get those services at his own expense. Keystone also charges that the claimant is not entitled to permanent disability benefits because he refused to submit to a hernia operation.

The claimant, a utility man or janitor, was carrying boxes weighing 30 to 40 pounds, up steps to Keystone's main office on March 22, 1973, around 7 or 8 p.m., when, as he testified, he made "an awkward move or slip" and noticed "pain in my back and down my legs and in my groin." He also testified that on the following day he reported the accident to the company nurse but failed to tell her about pain in his groin, because of embarrassment. She sent him to the company doctor, whom he saw two or three days later. Claimant said that he observed swelling in the area of the groin, and that he indicated to the company doctor he had "a funny feeling in my groin," although the doctor did not examine the claimant's groin. Thereafter, the claimant was examined by Dr. Churl Soo Suk, who confined him to the hospital for five days and ran a myelogram on him. The claimant's back was

operated on by Dr. Suk during a second hospitalization. In early 1974, the claimant visited Dr. D.G. Sereleas because of severe pain. Dr. Sereleas examined him and took X rays; he also suggested that the claimant go to the hospital. In addition, several other doctors had examined the claimant. In the fall of 1974, Keystone terminated the claimant's employment for refusing to undergo corrective hernia surgery.

At the hearing before the arbitrator, Dr. Robert Busch, an orthopedist, testified that his diagnosis of the claimant's condition was left inguinal hernia and "bilateral lumbosacral sprain with sciatic radiation of spasm to both hips and down the posterior aspect of both thighs." His examination of the claimant, he said, also showed "operative scarring, laminectomy changes, fusion changes, myelography residue, intraspinal canal." Dr. Busch concluded that the back and hernia conditions of the claimant were causally related to the accident of March 22, 1973, and that those conditions were permanent, preventing his return to work as a janitor; he could do no "lifting, bending, twisting, turning." Dr. Ben Lichtenstein, a psychiatrist and neurologist, also on behalf of the claimant, testified he believed the claimant was neither a psychotic, a neurotic, nor a malingerer, but was sincere in his fear of any more surgery including corrective surgery for the hernia and his back. Such fear, Dr. Lichtenstein intimated, is not unusual and is the prerogative of a patient. He admitted he was unable to diagnose the existence of a hernia, but he attested to limitations on the movement of the claimant's back because of pain; hence, he concluded that claimant could not adequately perform janitorial chores because of the necessity of bending.

Dr. William Kane, an orthopedic surgeon testifying for Keystone, "took a history" and performed a physical examination of the claimant almost a year after the injuries were sustained. Two months later Dr. Kane again

examined the claimant, who complained of a "knot" in the area of his groin (hernia) for which Dr. Kane suggested the claimant see a specialist. He also testified that, although he felt additional surgery would have helped alleviate pain in the claimant's low-back area, given the claimant's pessimism regarding the success of such an operation, he declined to persist in recommending it to the claimant. He also testified that the claimant could return to work but with restrictions, especially on lifting and bending.

Dr. Suk, who treated the claimant for almost a year beginning shortly after the injuries occurred, testified the claimant suffered from a ruptured disc "with a right sciatica." During that period of treatment and examination, the claimant complained of no injury other than the low-back pain, Dr. Suk said. Dr. Suk concluded that the claimant could perform "light duty, less than fifty pound weight lifting" chores. Also for Keystone, Dr. George Cooper, who first examined the claimant well over a year and a half later, testified that the claimant could not squat without pain and had "a well healed lumbar surgical scar," and that he tested for but found no hernia. His conclusion was that the claimant "had a postoperative back that was not associated with any neurological deficit" and could work so long as there was no heavy lifting or extensive bending.

This court has repeatedly held that "a court on review will not disturb a finding of the Industrial Commission unless its finding is contrary to the manifest weight of the evidence." (*E.g., Beloit Foundry v. Industrial Com.* (1976), 62 Ill. 2d 535, 538.) Although there are conflicting opinions by medical experts in this case, it is for the Industrial Commission "to resolve disputed questions of fact, including those of causal connection, and to draw permissible inferences and decide which of conflicting medical views is to be accepted." (*Ford Motor Co. v.*

*Industrial Com.* (1972), 50 Ill. 2d 267, 271.) Moreover, the findings of the Commission will not be reversed merely because the court might draw different inferences. (*Consolidated Freightways, Inc. v. Industrial Com.* (1976), 64 Ill. 2d 312, 318; accord, *C.R. Wikel, Inc. v. Industrial Com.* (1977), 69 Ill. 2d 273, 279.) We believe the record sufficiently supports the findings of the Commission that the claimant suffered total and permanent disability and sustention of an occupational hernia. Ill. Rev. Stat. 1973, ch. 48, par. 138.8(d).

Alternatively, Keystone argues that because the claimant refused to submit to additional surgery for his hernia conditions, he is not entitled to total permanent disability benefits. The claimant, the argument continues, was not reasonably exercising his freedom of choice. While one might agree with that assessment, we must point out three things. First, section 19(d) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.19(d)) gives to the Commission the discretion to reduce or suspend compensation where a claimant has refused "to submit to such medical, surgical, or hospital treatment as is reasonably essential to promote his recovery." Second, a claimant's refusal should be in good faith. (*Rockford Clutch Division v. Industrial Com.* (1966), 34 Ill. 2d 240, 246-47.) Third, the Workmen's Compensation Act is "designed for employees with divergent personalities, beliefs, and fears. If a claimant's response to an offer of treatment is within the bounds of reason, his freedom of choice should be preserved even when an operation might mitigate the employer's damages." (34 Ill. 2d 240, 247-48.) Exercising its discretion, the Commission concluded the claimant was not acting in bad faith but sincerely feared the surgery; and the record supports the Commission's award on this point. The arbitrator herself pointedly inquired into the motives and fears behind a patient's psychological state apropos of injury and recovery. Dr. Lichtenstein testified

that he concluded the claimant was not malingering and not neurotic but genuinely feared the risk in further surgery. Even Dr. Kane, for Keystone, did not believe surgery was desirable for the claimant because the claimant displayed such a pessimistic outlook on the success of such prospective surgery. Hence, the claimant's refusal to undergo surgery in these circumstances should not deprive him of the benefits awarded by the Commission.

The second issue raised by Keystone is that the claimant failed to give "notice of the hernia *** to Keystone within the required time." Both the claimant and Keystone stipulated that "notice of said accident was given said respondent [Keystone] within the time required under the provisions" of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.6(c)). They further stipulated that in "dispute is whether or not notice of a hernia arising out of said accident was given within the provisions of said Act." The relevant provisions of section 6 are:

> "(c) No proceedings for compensation under this Act shall be maintained unless notice of the accident has been given to the employer as soon as practicable, but not later than 45 days after the accident. Provided:
> (1) In cases of hernia, notice shall be given the employer within 15 days after the accident."

(The special hernia notice requirement has since been deleted (Ill. Rev. Stat. 1975 & 1977, ch. 48, par. 138.6(c)).) Keystone's contentions apparently are that section 6(c)(1) requires not merely notice of the accident but notice of the hernia condition within 15 days, and that the claimant's notice was insufficient in that respect.

There are no cases which have considered the precise issue of whether section 6(c)(1) required notice of the accident or notice of the hernia condition. However, neither syntax nor logic supports Keystone's construction of the statute, as a close reading shows. First, section 6(c)

refers to "notice of the accident"; there is no reason to assume that the legislature intended, in the very next paragraph (par. 6(c)(1)), a requirement of *notice of hernia condition* by its use of the word *notice*. The reasonable view is that section 6(c)(1) simply required that notice of the accident be given within 15 days where hernias are (later) diagnosed. It seems the legislature, in explicitly setting out for cases of hernias a different time limit for notice, would have been similarly explicit in additionally burdening the claimant with a notice of hernia condition had it intended that. Second, we find it unlikely that the legislature intended that the claimant himself diagnose a hernia or rush out to have a diagnosis made in order to meet a 15-day requirement. A hernia may develop gradually, with symptoms not obvious within 15 days. (See *Crow's Hybrid Corn Co. v. Industrial Com.* (1978), 72 Ill. 2d 168.) The 15-day limit in which to give notice of the accident simply enables the employer to investigate the accident (*Atlantic & Pacific Tea Co. v. Industrial Com.* (1977), 67 Ill. 2d 137, 143) and discourages frivolous or fraudulent claims. To hold any other way would, moreover, contravene the liberality which "should be allowed to the extent that it is consistent with the protection of the employer against unjust concealment of claims." *Republic Steel Corp. v. Industrial Com.* (1962), 26 Ill. 2d 32, 41.

Keystone apparently challenges the sufficiency of the notice of the accident because the claimant failed to fully describe his hernia symptoms. Again we disagree. It is true that the claimant's testimony was contradictory as to what he told the nurse, company doctor and Dr. Suk about pain in his groin. However, the claimant, of limited education, maintained on both direct examination and cross-examination that he indicated to the company doctor, four days after the examination, he "had some kind of funny feeling up in there" and "hurted [*sic*] right in

here," referring to his groin. This court has held that the intention of the legislature, as far as notice is concerned, is "to require an employee *** to place the employer in possession of all known facts" within the time limit. (*Quaker Oats Co. v. Industrial Com.* (1953), 414 Ill. 326, 336-37.) This the claimant attempted to do. Although there were inconsistencies in the claimant's testimony, such conflicts of testimony are for the trier of fact to resolve; the Commission is in a better position to judge credibility. (*U.S. Steel Corp. v. Industrial Com.* (1964), 32 Ill. 2d 68, 74.) Hence, we find the claimant's notice to the employer met the requirements of the Act.

The last issue raised by Keystone is whether or not the claimant is entitled to reimbursement by Keystone of $40 for X rays and an examination of the claimant performed by Dr. D.G. Sereleas on February 7, 1974, because the claimant "elect[ed] to secure his own physician *** at his own expense." (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(a).) (Section 8(a) of the Act has since been amended to allow a claimant to elect such services at the employer's expense (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a)).) The claimant maintains that at the time he was receiving no treatment but was in much pain. If medical services are necessary and an employer is aware of the claimant's desire or need for such medical services, "the employer's liability for reimbursement would be clear." (*Barricks Corp. v. Industrial Com.* (1969), 44 Ill. 2d 9, 14.) Those elements of necessity and awareness or notice of the desire for medical services are present here. Dr. Suk had released the patient from his "acute care"; yet the claimant continued to have pain, as he testified. A week before his visit to Dr. Sereleas, the claimant had informed Dr. Suk, who was no longer treating him, that he wished to see another doctor. (See *Owens-Corning Fiberglas Corp. v. Industrial Com.* (1977), 66 Ill. 2d 247, 256, where an employer was held liable for medical services sought by a claimant because a doctor in

its employ was aware of the claimant's condition.) Moreover, the claimant notified Keystone the following day of the visit to Dr. Sereleas. Having determined that Keystone would not pay for further consultation with or work by Dr. Sereleas, the claimant did not go to him again but apparently submitted to Keystone's services, including another examination by Dr. Suk a week later. We simply are unable to determine, as Keystone wishes us to, that there was an "election" to receive medical services since he was no longer being treated and yet was apparently experiencing pain. (See *Jewel Tea Co. v. Industrial Com.* (1968), 39 Ill. 2d 180, 183.) Hence, we find Keystone is liable for the $40.

For the reasons stated, we affirm the judgment of the circuit court.

*Judgment affirmed.*