J & J TRANSMISSIONS, Appellant, v. THE INDUSTRIAL COMMISSION
*et al.* (Jimmy Mattison, Appellee).

Second District (Industrial Commission Division)   No. 2—91—0461WC

Opinion filed April 14, 1993.

Mark A. Braun, of Braun, Lynch, Smith & Strobel, of Chicago, for appellant.

Kevin H. Millon, of Ralph A. Grabic & Associates, P.C., of Wheaton, for appellee.

James M. Charlton and James P. Palermini, both of Huck, Bouma, Martin, Charlton & Zellner, P.C., of Glen Ellyn, for Milwaukee Insurance Company.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Jimmy Mattison, filed two applications for adjustment of claim (applications) pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) as a result of an accident on June 7, 1985 (85—WC—37151), and a second accident on June 21, 1985 (85—WC—49098), both occurring during his employment with the respondent, J & J Transmissions. Both accidents involved injury to the claimant's lower back. Following a consolidated hearing on the two applications, the arbitrator found that the claimant failed to prove that his condition of ill-being was causally connected to his accident of June 7, 1985, and denied the claimant benefits on that application; however, the arbitrator found the claimant did prove his condition of ill-being was causally related to his accident of June 21, 1985, and awarded the claimant 22³/₇ weeks of temporary total disability (TTD), medical expenses in the amount of $2,534.75, and permanent partial disability (PPD) for 5% loss of the man as a whole. On review the Industrial Commission (Commission) modified the arbitrator's decision by finding that the claimant's condition of ill-being was causally related to his accident of June 7, 1985, and not the accident of June 21, 1985, but affirmed the arbitrator's decision in all other respects. The circuit court of Kane County confirmed the decision of the Commission. We affirm.

At the arbitration hearing, the claimant testified that he had been employed by the respondent since September 1984. On June 7, 1985, he and another employee lifted a transmission from the floor to his bench. The transmission weighed 80 to 85 pounds. While the claimant was lifting the transmission, his right foot slipped in an oil spot. The claimant did not fall, but he "twisted and strained" his body. Immediately following this accident, the claimant suffered severe lower left back pain, and he noticed it was difficult for him to stand. He sat down for a period of time and tried to relax his back. The claimant

testified that it felt like he pulled a muscle at that time. When the claimant injured himself, the shop manager, Mike Lambert, was present as was the claimant's co-worker John Kosin. The claimant worked another hour and a half before he left for the day, following which he went straight home.

Upon arriving home, the claimant's back was "really sore," so he took the medications Darvon and Naprosyn, which he had on hand for another medical problem. The claimant also took a hot bath, and then he went to bed with a heating pad on his back. The next morning, the claimant could not sit up. He described his back as "very painful, swollen." Because it was Saturday, the claimant stayed in bed that day with the heating pad and took more of his medication. The claimant did not go to work on Monday, but he did light stretching exercises to try to help his back.

The claimant returned to work on Tuesday, at about 1 p.m., as his back had "calmed down enough where I felt I could handle the work"; however, his back was still painful and it was hard for the claimant to get up. At work, the claimant did not do any lifting, but he did work at his bench, which did not require him to bend over. The claimant worked the remainder of the day, and while driving home from work, he stopped once or twice to stretch his back muscles because the muscles were tightening up on him, "like muscle spasms, more pain." On Wednesday, the claimant stated he was a little more sore from working, but he did return to work. He did not lift anything and he stooped slowly.

The claimant explained that he did not try to do any lifting or bending at work until June 20, at which time he began lifting small transmissions with assistance. During this time, the claimant had continued his self-treatment with medication, heating pad, and hot baths.

On June 21, 1985, the claimant helped Lambert, who was having trouble getting clearance to remove an engine transmission from a car. The claimant was holding a pry bar between the car frame and the engine to move it so Lambert could obtain the necessary clearance. While using the pry bar, his feet again slipped on some antifreeze and oil on the floor. The claimant did not fall down, but he caught himself on the car in such a manner that he ended up like a "U" under the car. The claimant's weight was on his arms. The claimant stated that he nearly "passed out" from the pain, and he knew he had hurt his back again. The claimant sat down for a while, and after he got up, he went home.

At home, the claimant again took his medication and a hot bath and went to bed with the heating pad. The claimant stayed in bed for

the weekend, and on Monday, he called a doctor for an appointment. The claimant saw Dr. Creech the following day. Dr. Creech prescribed medication (muscle relaxers and pain killers) and light stretching exercises. The doctor did not permit him to return to work.

The claimant saw Dr. Creech a week later, but his condition had not improved. The doctor continued the claimant with the same treatment. On July 9, 1985, the doctor released the claimant for light duty, *i.e.*, no lifting, bending or stooping. The claimant worked for a full day upon returning to work, but the next morning he was unable to get out of bed and was stiff and sore. The claimant called the doctor, who arranged for the claimant to undergo a CAT scan. The doctor prescribed more medication and started the claimant on physical therapy. The claimant continued the physical therapy and medication treatment, but when he failed to improve, Dr. Creech referred him to Dr. Schierer, an orthopedic specialist.

The claimant saw Dr. Schierer around September 1, 1985. Dr. Schierer prescribed a back brace, hot packs and exercise under a therapist's supervision. Eventually, Dr. Schierer prescribed a TENS (transcutaneous electrical nerve stimulator) unit for him. The claimant continued to see Dr. Schierer until November 2, 1985, at which time the doctor released him and told the claimant he could not help him further. Since November 1985, the claimant has continued to use his back brace and his TENS unit as needed. According to the claimant, he uses his TENS unit approximately five times a week, sometimes for an hour, sometimes for all day. When Dr. Schierer released the claimant for work, it was with the restriction that he not be allowed to lift. The claimant testified that he continues to have pain in his back.

On cross-examination, the claimant explained that the medication he took between June 7, 1985, and June 21, 1985, was medicine that he had had on hand for "septic necrosis." The claimant admitted that he did not seek medical treatment after the incident of June 7, 1985, and that his lost time for work and his professional medical treatment occurred after June 21, 1985. The claimant further admitted that he was "feeling good" when he returned to work on June 11, 1985, but that he was not back to normal. The medication he took on his own relieved the pain, but when the medication wore off, the pain returned.

Certain medical records were admitted into evidence. The records from Dreyer Medical Clinic (Dr. Schierer) indicated that the claimant reported he was injured at work on June 7, 1985, but that he first re-

ceived medical treatment on June 25, 1985. The diagnosis of the claimant's condition was given as lumbar and sacroiliac strain.

The records·from Copley Memorial Hospital (Dr. Creech) indicated that the claimant was first seen on June 25, 1985, that the claimant reported he injured his back 2½ weeks prior to that time, and that he then reinjured his back three days before his examination. In a letter from Dr. Creech to Milwaukee dated January 16, 1986, Dr. Creech gave as his opinion that the claimant's recent back problem "is a recurrence of the injury of June 7, 1985, which he sustained at work lifting a heavy transmission." The doctor further stated in this letter that the claimant was off work for his back injury on June 10 and June 11 and that he had gradual improvement; however, on June 21, 1985, the claimant reinjured his back, which resulted in the claimant's current back condition.

In a letter report from Dr. Hirschfield dated January 21, 1986, the doctor indicated he saw the claimant on January 13, 1986. In the history given to Dr. Hirschfield by the claimant, the claimant reported that he suffered an injury to his back on June 7, 1985, but that he received no medical attention and he continued to work. Subsequently, two weeks later, the claimant reinjured his lower back on June 21, 1985. Dr. Hirschfield reported that the claimant complained of pain, soreness and stiffness over his lower back and down his left leg with a tingling sensation in his left leg. The claimant also complained of pain on lifting, bending and sitting.

The X rays taken by Dr. Hirschfield indicated that the claimant had a narrowing of the lumbosacral disc space and osteophytic spurring at L4-L5. He diagnosed the claimant's condition as lumbosacral sprain "with impairment of motility of both legs in straight leg raising," and "[i]mpairment of motility of the lumbosacral spine in extension and lateral bending," with a "[p]ossible herniated disc syndrome" in the lumbar area. Dr. Hirschfield concluded by stating that "[b]ased on the objective physical findings and x-ray [sic] findings, this patient sustained an injury to the lumbosacral area, accounting for permanent partial disability of moderate extent each leg."

Dr. Schierer's records indicated that the claimant injured his back on June 7, 1985. Dr. Schierer recommended that the claimant return to work on November 22, 1985, without restriction and that the claimant continue with his TENS unit.

A letter report by Dr. Timothy Payne dated November 4, 1986, indicated he saw the claimant on October 30, 1986. In this report, Dr. Payne stated that the claimant gave a history of having injured his back at work on June 7, 1985, following which the claimant developed

stiffness and pain when getting out of bed, but that the claimant continued to work. On June 21, 1985, the claimant slipped while prying an engine from a car. Dr. Payne found that claimant had subjective complaints of stiffness and pain with lifting and pain radiating down his left leg. Dr. Payne examined the claimant and took X rays of the claimant's lower back. As a result of his examination, Dr. Payne determined that the claimant had no appreciable objective impairment with his back, and he recommended that the claimant do a home exercise program.

From the foregoing evidence, the arbitrator found that the claimant's condition of ill-being was causally connected to his accident of June 21, 1985, and awarded the claimant benefits for his injuries, but the arbitrator denied the claimant benefits for his incident of June 7, 1985, holding that the claimant failed to prove he had had an accident on that date. The Commission modified the arbitrator's decision by holding that the claimant's condition of ill-being was causally connected to his accident of June 7, 1985, and that the incident of June 21, 1985, was a recurrence of his back injury incurred earlier. The circuit court confirmed the Commission's decision.

Before addressing the issues involved, some clarification is necessary. The appeal of the claimant's case is not because the respondent disclaims that the claimant suffered from a work-related accident or contests the awarding of benefits, but the heart of the matter lies in the fact that on June 7, 1985, the respondent had a different insurance carrier than on June 21, 1985. The insurance carrier for the respondent on June 7, 1985, was Western States Insurance Company (Western), and the respondent's insurance carrier on June 21, 1985, was Milwaukee Insurance Company (Milwaukee). The dispute on appeal concerns which carrier is liable to pay the benefits awarded to the claimant.

Initially, we must address a jurisdictional issue raised by Milwaukee. When review of the Commission's decision was sought before the circuit court, all of the necessary documents required to invoke the circuit court's subject-matter jurisdiction pursuant to section 19(f) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(f)) were timely filed with the circuit clerk. Among those documents filed was a bond, which was signed by Franklin D. Steiner, an employee (it appears this person's title is senior claims manager) for Western as principal on the bond, and David A. Weiland signed the bond as an agent for the surety. Milwaukee filed a motion to quash summons and to dismiss Western's appeal on April 30, 1990, on the basis that the bond filed was not in conformance with section 19(f), as Western was not the

"one against whom the Commission shall have rendered an award for the payment of money." (Ill. Rev. Stat. 1989, ch. 48, par. 138.19(f)(2).) The circuit court denied Milwaukee's motion.

Milwaukee subsequently filed a motion for reconsideration of its motion to quash summons and to dismiss appeal on December 5, 1990. The basis for this motion was again a defective bond, but Milwaukee supported its motion by citing to this court's decision in *Illinois Armored Car Corp. v. Industrial Comm'n* (1990), 205 Ill. App. 3d 993, 563 N.E.2d 951, which was decided after Milwaukee's first motion to quash had been denied. The circuit court denied Milwaukee's motion for reconsideration and, in the same order, again denied its motion to quash summons and to dismiss the appeal. Milwaukee did not file a cross-appeal on the denial of its motion to quash and to dismiss; however, Milwaukee raises this issue in its answer brief.

Western argues in its reply brief that Milwaukee has waived this jurisdictional issue as Milwaukee did not file a cross-appeal on the denial of its motion. We need not address the waiver argument, however, because of our supreme court's recent decision in *Deichmueller Construction Co. v. Industrial Comm'n* (1992), 151 Ill. 2d 413, 603 N.E.2d 516. In *Deichmueller*, our supreme court agreed with and adopted the decision and reasoning in *Illinois Armored Car*, but held the rule enunciated therein would apply prospectively from the date of the court's opinion, September 24, 1992. As our decision in *Illinois Armored Car* does not apply to the case at present, the circuit court had subject-matter jurisdiction and Western's waiver argument is moot.

Western first argues that the Commission's determination that the claimant's condition of ill-being was causally connected to his accident of June 7, 1985, and that the claimant's incident of June 21, 1985, was simply a recurrence of his earlier back injury was against the manifest weight of the evidence. It is Western's contention that the incident of June 21, 1985, was an "accident" as that term is legally defined under the case law and for the Commission to hold otherwise will create an anomaly in the law. It is Western's position that the Commission has held that a recurrence of an injury is not an accident and, thus, is not compensable. Western argues that the claimant's first professional medical treatment was obtained after the June 21, 1985, accident and that the claimant did not lose time off work until following that date, which is conclusive that the claimant's injuries were causally connected to that date.

It is well established that it is the Commission's province to determine whether an accident arose out of and in the course of employ-

ment, *i.e.*, the causal connection between the employee's condition of ill-being and his employment, and that the Commission's determination of this issue will not be overturned on review unless contrary to the manifest weight of the evidence. (*Peoria Motors, Inc. v. Industrial Comm'n* (1982), 92 Ill. 2d 260, 442 N.E.2d 144.) Further, a claimant's return to work following an accident is not determinative of causation between the accident and subsequent disability. *Jewel Tea Co. v. Industrial Comm'n* (1968), 39 Ill. 2d 180, 233 N.E.2d 557.

■ In the present case, claimant testified that when he returned to work following his June 7, 1985, accident, he felt good but he was not back to normal. His testimony established that it was only through the use of medicine he had on hand and by his self-imposed lifting restrictions that he was able to work. Further, he did miss a day and a half of work after the June 7, 1985, accident. Additionally, the claimant reported to all of the physicians he saw that he initially injured his back on June 7, 1985, and that he subsequently reinjured it on June 21, 1985. From the medical evidence and the claimant's testimony, the Commission could have determined that the claimant's ill-being was a result of his June 7, 1985, accident and that he had not healed sufficiently from this incident before another occurrence caused him to suffer a recurrence of his back injury. Thus, simply because the claimant returned to work was not determinative that his injury was not caused by his initial injury.

We find that this case is analogous to *Jewel Tea Co. v. Industrial Comm'n* (1968), 39 Ill. 2d 180, 233 N.E.2d 557. In *Jewel Tea Co.*, the Commission found that the claimant's back problems which arose during his employment for the City of Chicago were a recurrence of his injuries from two work-related accidents which had occurred over six months earlier while employed by Jewel Tea Company. The Commission held that Jewel was liable for the benefits due the claimant even though his reinjury occurred while in the employ of another. Here, the recurrence of the claimant's injury was the result of another accident, but the claimant's condition stemmed from his incident of June 7, 1985, when the claimant's back injury was originally incurred. The Commission's determination that his condition of ill-being was causally connected to his accident of June 7, 1985, was not against the manifest weight of the evidence.

■ The second issue raised by Western is that the Commission did not give due deference to the decision of the arbitrator, who had the witnesses before him and where the Commission did not hear additional evidence. Western supports this argument by citing

to *Cook v. Industrial Comm'n* (1988), 176 Ill. App. 3d 545, 531 N.E.2d 379, wherein Western claims that this court recognized that the Commission is not bound by the decision of the arbitrator, but that the arbitrator's decision is not without legal effect, and that where no additional evidence is heard by the Commission, an extra degree of scrutiny of the record must be applied to determine whether there is support in the record for the Commission's decision. However, this court stated subsequently in *Dillon v. Industrial Comm'n*:

> "It is well settled that the Commission is the judge of the credibility of the witnesses. [Citation.] It is the peculiar province of the Commission not only to determine the credibility of witnesses but also to weigh the testimony and to determine the weight to be given to the evidence. [Citations.] Regardless of whether the Commission hears testimony in addition to that heard by the arbitrator, it exercises original jurisdiction and is in no way bound by the arbitrator's findings." (*Dillon v. Industrial Comm'n* (1990), 195 Ill. App. 3d 599, 607, 552 N.E.2d 1082, 1087.)

Thus, the proposition raised by *Cook*, which is substantially similar to the one that is being espoused by Western here, is not an accurate statement of the law, and the above quotation from *Dillon* controls. Therefore, Western's argument must fail.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McCULLOUGH, P.J., and EGAN, STOUDER and WOODWARD, JJ., concur.