JAMES BOATMAN, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Cook County, Appellee).

First District (Industrial Commission Division)   No. 1—93—0429WC

Opinion filed December 23, 1993.

James E. Riley, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Karen A. Covy, William Pistorius, and Lauren B. Klein, Assistant State's Attorneys, of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant James Boatman appeals from an order of the circuit court of Cook County confirming a decision of the Illinois Industrial Commission (Commission) which reversed an award of the arbitrator without hearing additional evidence. The respondent employer is Cook County.

The arbitrator awarded claimant $282.25 per week for 60 weeks as a result of complete loss of use of his left leg to the extent of 30%. (Ill. Rev. Stat. 1991, ch. 48, par. 138.8(e).) The Commission reversed, finding that claimant had failed to prove a causal relationship between the accident of October 13, 1981, and claimant's current condition of ill-being.

The only issue raised on appeal is whether the Commission's decision is against the manifest weight of the evidence. We affirm.

Claimant's first contention concerns the applicable standard of review by this court when the Commission, without hearing new evidence, rejects the factual findings of the arbitrator and reverses an award. Claimant relies on *Cook v. Industrial Comm'n* (1988), 176 Ill. App. 3d 545, 552, 531 N.E.2d 379, 384, which held that in such a situation this court would apply an extra degree of scrutiny to the record. This standard has been rejected as an incorrect statement of the law. *J&J Transmissions v. Industrial Comm'n* (1993), 243 Ill. App. 3d 692, 700, 612 N.E.2d 877, 882; *Hartsfield v. Industrial Comm'n* (1993), 241 Ill. App. 3d 1055, 1060, 610 N.E.2d 702, 706; *Wagner Castings Co. v. Industrial Comm'n* (1993), 241 Ill. App. 3d 584, 594, 609 N.E.2d 397, 404.

Claimant's remaining contention is that the evidence does not support the conclusion of the Commission that claimant failed to prove a causal relationship. The determination of the question of causal connection is uniquely within the province of the Commission,

and the Commission's decision will not be overturned unless it is contrary to the manifest weight of the evidence. (*Antonopoulos v. Industrial Comm'n* (1990) 195 Ill. App. 3d 689, 693, 552 N.E.2d 1190, 1192; *Ludwig v. Industrial Comm'n* (1990), 192 Ill. App. 3d 729, 733, 549 N.E.2d 1, 3.)

> "[T]he test of whether the Commission's decision was supported by the manifest weight of the evidence is not whether the reviewing court or any other tribunal might reach the opposite conclusion on the same evidence, but whether there was sufficient factual evidence in the record to support the Commission's decision (*A.O. Smith Corp. v. Industrial Com.* (1977), 69 Ill. 2d 240)." (*Benson v. Industrial Comm'n* (1982), 91 Ill. 2d 445, 450, 440 N.E.2d 90, 93.)

Choosing from conflicting inferences which may arise from medical evidence is the province of the Commission. (*Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 442, 559 N.E.2d 1034, 1037.) The reviewing court will not substitute its judgment for that of the Commission merely because different inferences might have been drawn from the evidence. *Martin v. Industrial Comm'n* (1992), 227 Ill. App. 3d 217, 219, 591 N.E.2d 108, 109.

Claimant's application for adjustment was filed on August 15, 1984. It alleged an accident date of October 13, 1981. Claimant testified that on that date he was a bricklayer employed by respondent and was assigned to Oak Forest Hospital. While descending an exterior metal stairway, a step fell out and his right leg fell through to the crotch. He was taken to the hospital emergency room. Care was given to his right leg and shoulder. The left leg felt as if it had been badly twisted. He believed he informed persons in the hospital that he twisted the left leg. His right leg hurt "so bad that anything else would be a scratch." He returned to work the next day on light duty.

Claimant eventually complained about the left leg to Dr. Wayne Mathy, his family physician. The left leg was operated on in June 1984. The left leg had become increasingly painful to the point that he could not sleep at night. He testified he had never hurt this leg before or since.

When he went to the Oak Forest Hospital employee health service on the day of and day after the accident, he only complained of his right knee, leg, shoulder and arm. Between October 13, 1981, and June 1984, he noticed increased pain in the left leg, but did not treat with any doctor during this period for his left leg. Although he testified that he had no prior problems with his legs, claimant stated that if Mathy's records reflected complaints of pain in the left leg in

1979, that would be correct. Prior to the surgery in June 1984, claimant saw Mathy on May 4, 1984, and told him that he had stepped off a foot plank sometime in April 1984 and his leg had become increasingly sore. The incident in April 1984 occurred while claimant was on the job, but he did not complete an accident report. At the time of testifying, claimant was currently working. He had no work restrictions and was not taking any prescribed medication.

The report of Dr. Gerald McDonald, who examined claimant on October 2, 1984, was admitted. Claimant's counsel indicated to the arbitrator that, if called, McDonald would testify to a causal connection between the October 13, 1981, incident and claimant's current condition of ill-being. McDonald's report indicated a past history of lower back injury in 1980 for which claimant was off work for eight weeks. It also indicated the X rays of the left knee revealed "degenerative changes involving the medial and lateral margins of the distal tibia, with some narrowing of the medial joint compartment; there was irregularity of the articular surface of the patella with superior spurring."

Dr. Audley Loughran examined claimant in April 1985 and concluded in his report that the claimant had some rotatory instability of the left knee which was "most probably" the result of the accident. But the medical history given to Loughran, although referring to the accident of October 31, 1981, made no mention of the April 1984 incident of stepping off a foot plank.

Medical records of Mathy were also admitted into evidence. On December 19, 1981, claimant informed Mathy that he fell at work on October 13, 1981. Mathy's notes do not indicate any complaints or findings with regard to the left knee. The records do not disclose any notation of left knee pain until May 4, 1984. On May 4, 1984, claimant complained of soreness in the medial aspect of the left knee which he twisted three "weeks ago." Swelling was observed. Mathy's notation of June 9, 1984, indicated X rays showed cartilage damage, as reported to Mathy by Dr. Michael Orth, an orthopedic surgeon. On June 14, 1984, Orth performed a medial meniscectomy and debridement arthroplasty of the left knee.

Mathy's records indicated that, prior to 1981, claimant complained of backaches with pain down his legs to his toes on March 27, 1979, and April 26, 1979. The March 27, 1979, entry indicated a past history of backaches for years. Claimant also complained of severe back problems on August 21, 1979. An X-ray report dated March 27, 1979, indicated mild arthritic changes in the lumbar spine and "very minimal early degenerative changes" in both knees. The knees were essentially normal.

The medical records of claimant's treatment at Oak Forest Hospital indicated that on October 13, 1981, the attending physician prepared a consultation request for orthopedic services in which was noted that claimant suffered a hematoma and abrasions on the right leg. There was no X-ray evidence of fracture, and he did not complain of pain. No mention was made of the left knee in the consultation request or the consultant's report of October 16, 1981. On October 14, 1981, claimant complained of pain in both shoulders and the groin. No complaint of pain in the left knee was noted. On October 15, 1981, claimant complained of pain in both shoulder joints and "knee joint." No reference was made as to which knee. Claimant returned to work on October 15, 1981. The records of June 8, 1984, indicated claimant complained of difficulty with his left knee and that an arthrogram done on June 7, 1984, showed cartilage damage. The doctor's notes stated that claimant related it to the injury in 1981, but after reviewing the charts and X rays, claimant was advised that the treatment in 1981 related to the right leg and shoulder, and claimant agreed that he was "probably mistaken."

The hospital records concerning treatment following the October 13, 1981, incident made no reference to a left knee injury. Claimant returned to work on October 15, 1981, and received no treatment for the left knee for over $2^{1}/_{2}$ years. Surgery was not performed on claimant's left knee until June 14, 1984, and three months prior thereto, in April 1984, claimant had stepped off a foot plank and twisted his knee. There was also medical evidence of pain in claimant's knees and the onset of arthritis prior to the October 13, 1981, incident.

*Fermi National Accelerator Lab v. Industrial Comm'n* (1992), 224 Ill. App. 3d 899, 908, 586 N.E.2d 750, 756, does not support claimant's contention. In *Fermi*, wherein we affirmed the Commission's decision, the claimant fell while using crutches which were provided as a result of the first injury.

As stated in *International Harvester Co. v. Industrial Comm'n* (1970), 46 Ill. 2d 238, 245, 263 N.E.2d 49, 53, "[a]n 'independent intervening cause' has been held to be one which breaks the chain of causation between a work-related injury and an ensuing disability or injury." The supreme court referred to cases which applied the "but for" test: "basing compensability for an ultimate injury or disability upon a finding that it was caused by an event which would not have occurred had it not been for the original injury." *International Harvester Co.*, 46 Ill. 2d at 245, 263 N.E.2d at 53.

The Commission found that because of the accident of October 13, 1981, claimant "went to emergency room where he was treated

for a contusion in his right leg and his right shoulder was examined. The records of Oak Forest Hospital make no reference to an injury to his left leg." It found petitioner returned to work the next day, and continued to work for two years and eight months, during which time he did not have any treatment to his left leg. The Commission further found the left knee injury occurred in April 1984, some "2-1/2 years after Petitioner's first alleged accident."

As the trial court found, the lapse of time between the October 13, 1981, accident and the left knee surgery on June 14, 1984, "raised a substantial inference that Petitioner's left leg condition was not a result of the October 13, 1981[,] accident." "[T]here was only Petitioner's testimony that he complained of a left knee condition immediately after the accident and continued his complaints thereafter. The medical records, however, failed to disclose any complaints or treatment either immediately after the accident or for two years and eight months thereafter."

The Commission's determination that there is no connection between the October 13, 1981, accident and the left knee injury in April 1984 is clearly supported by the record in this case. The decision of the Commission is not against the manifest weight of the evidence.

Accordingly, the order of the circuit court of Cook County confirming the decision of the Commission is affirmed.

Affirmed.

RAKOWSKI, WOODWARD, SLATER and RARICK, JJ., concur.