GLOBAL PRODUCTS, Appellant, v. ILLINOIS WORKERS'
COMPENSATION COMMISSION *et al.*, Appellees.

First District (Illinois Workers' Compensation Commission Division)
No. 1—08—1914WC

Opinion filed June 9, 2009.—Rehearing denied July 14, 2009.

DONOVAN, J., concurring in part and dissenting in part.

Robert M. Harris and Adrian T. Cherikos, both of Knell & Poulos, PC, of Chicago, for appellant.

Neal K. Wishnick, of Sostrin & Sostrin, PC, of Chicago, for appellees.

JUSTICE HUDSON delivered the opinion of the court:

Claimant, John Hall, Jr., filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1998)). He alleged that he sustained an employment-related injury to his lower back when he slipped and fell at work. The arbitrator awarded claimant 327³/₇ weeks' temporary total disability (TTD) at $213.34 per week, $53,177.91 for medical expenses, as well as certain penalties and attorney fees. The Workers' Compensation Commission (Commission) adopted the decision of the arbitrator and remanded for possible further proceedings pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327 (1980). The circuit court of Cook County confirmed the Commission's decision. Respondent, Global Products, now appeals, arguing that the Commission's decision was contrary to the manifest weight of the evidence in that it did not find that claimant had engaged in an injurious practice such that compensation should be denied (see 820 ILCS 305/19(d) (West 1998)). Respondent also contends that the imposition of fees and penalties was inappropriate under the circumstances of this case. For the reasons that follow, we affirm in part and reverse in part.

## I. BACKGROUND

Claimant testified that he had been employed as a laborer by respondent. His job required him to lift 100-pound bags of wax and animal fat and pour them into a mixer. At other times, claimant worked making "wheel buffs." In the course of performing this task, claimant would have to carry 15 wheel buffs at a time. On August 31, 1999, claimant was carrying a group of wheel buffs, and he slipped and fell. The wheel buffs landed on him. Claimant initially thought

that he was not hurt. The next day when he awoke, he could not get out of bed, so he sought medical treatment. After a period during which claimant received conservative treatment, an operation was performed on claimant's back on December 2, 1999.

Following the surgery, claimant continued to experience pain in his leg. Records show claimant experienced some improvement over the next few months. On two occasions, he tripped and nearly fell. Claimant underwent a lumbar myelogram and began treating with Dr. Stanley of the Chicago Institute of Neurosurgery. In June 2000, claimant experienced another fall. Claimant then came under the care of Dr. Mark Levin. Levin initially prescribed physical therapy. Subsequently, Levin ordered an MRI and then performed a fusion. Eventually, on October 11, 2002, a second lumbar surgery—a fusion—was performed on claimant for a recurrent herniation of the L5 disk.

Claimant testified that no doctor had advised him to stop smoking cigarettes. During cross-examination, he acknowledged the Dr. Mather (respondent's independent medical examiner) did raise the subject of smoking during their final visit. Levin's records indicate that he did tell defendant to cease smoking. Both Levin and Mather testified that they instructed claimant to quit smoking prior to surgery. Indeed, Mather opined that claimant's smoking resulted in the failure of his first spinal fusion.

The arbitrator found that claimant's condition of ill-being was causally related to his on-the-job accident. According to the arbitrator, both claimant and Dr. Levin were credible. The arbitrator also noted that all doctors testifying in this case agreed that the surgeries performed upon claimant were necessary and that a third surgery is indicated. However, respondent refused to authorize a third surgery due to fact that claimant continued to smoke cigarettes. Regarding this issue, the arbitrator found that "Dr. Levin has taken [claimant's] smoking history into account in developing a treatment plan" and that "[t]he fact that [claimant] smokes cigarettes is not a reasonable basis to deny [claimant] his need for revision surgery." Moreover, the arbitrator expressly found that "the need for a third surgery to [claimant's] back is related to [claimant's work-related] accident."

The Commission adopted the opinion of the arbitrator in full. The circuit court of Cook County determined that the Commission's decision was not contrary to the manifest weight of the evidence. This appeal followed.

## II. ANALYSIS

Respondent raises two main issues in this case. First, it argues that claimant's use of cigarettes constitutes an injurious practice such

that the Commission should have denied claimant recovery for medical expenses and time off work following his second surgery. Actually, respondent's argument meanders between smoking being an injurious practice under section 19(d) of the Act (820 ILCS 305/19(d) (West 1998)) and it being an intervening cause that severed the causal relationship between claimant's injury and employment (see *Vogel v. Industrial Comm'n*, 354 Ill. App. 3d 780, 786 (2005)). Respondent makes two additional arguments regarding TTD and medical expenses that are wholly dependent on this first claim. As we reject respondent's first argument, these two derivative claims must fail as well. Second, respondent argues that it should not be subject to penalties and fees (see 820 ILCS 305/16, 19(k), 19(l) (West 1998)) because claimant's continued smoking was a reasonable basis for it to deny benefits to claimant.

## A. Injurious Practice and Causation

We first turn to respondent's claim that the Commission should have denied compensation due to claimant's smoking. Respondent cites section 19(d) of the Act (820 ILCS 305/19(d) (West 1998)), which suggests it is raising an injurious practice defense. At other times, respondent makes assertions like "[claimant's] self-inflicted behavior broke any chain of causation back to the original work injury." Such claims sound like respondent is asserting that claimant's smoking is an intervening cause. See *Vogel*, 354 Ill. App. 3d at 786. These are principles of law governed by different standards. One difference is the standard of review. Causation, including the existence of an intervening cause, is a question of fact subject to the manifest-weight standard of review. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 293 (1992). Conversely, section 19(d), by its plain terms, vests the Commission with discretion to reduce an award where a claimant engages in an injurious or unsanitary practice. 820 ILCS 305/19(d) (West 1998) ("If any employee shall persist in insanitary or injurious practices which tend to either imperil or retard his recovery or shall refuse to submit to such medical, surgical, or hospital treatment as is reasonably essential to promote his recovery, the *Commission may, in its discretion*, reduce or suspend the compensation of any such injured employee" (emphasis added)); *Bailey v. Industrial Comm'n*, 286 Ill. 623, 626 (1919).

Another difference involves the relationship between a claimant's current condition of ill-being and the accident. For an employer to be relieved of liability by virtue of an intervening cause, the intervening cause must completely break the causal chain between the original work-related injury and the ensuing condition. *Boatman v.*

*Industrial Comm'n*, 256 Ill. App. 3d 1070, 1074 (1993). Employment need only remain a cause, not the sole cause or even the principal cause, of a claimant's condition. *Rotberg v. Industrial Comm'n*, 361 Ill. App. 3d 673, 682 (2005). So long as a "but-for" relationship exists between the original event and the subsequent condition, the employer remains liable. *Lee v. Industrial Comm'n*, 167 Ill. 2d 77, 87 (1995); *International Harvester Co. v. Industrial Comm'n*, 46 Ill. 2d 238, 245 (1970). In this case, the Commission could have quite reasonably determined that there is clearly a but-for relationship between claimant's at-work injury and his current condition. Quite simply, if claimant had not had the surgery necessitated by his on-the-job fall, there would have been no fusion to fail as a result of claimant's smoking. See *Vogel*, 354 Ill. App. 3d at 788 ("Even if the accident was responsible for the failed fusion, such a condition could not have developed but for the surgery, which everyone agreed was necessary as a result of claimant's work injury"). Employment remains a cause of claimant's condition. Thus, smoking is not an intervening cause that would relieve respondent from liability.

Unlike an intervening cause, there is no requirement that an injurious practice be the sole cause of a claimant's condition of ill-being for the Commission to reduce or deny compensation. See 820 ILCS 320/19(d) (West 1998). Rather, the Commission may, in its discretion, reduce an award in whole or in part if it finds that a claimant is doing things to retard his or her recovery. *Keystone Steel & Wire Co. v. Industrial Comm'n*, 72 Ill. 2d 474, 481 (1978). Section 19(d) vests the Commission's discretion on this subject, so we will only overturn its decision if that discretion is abused. See *Yocum v. Industrial Comm'n*, 297 Ill. App. 3d 813, 817-18 (1998). An abuse of discretion occurs only where no reasonable person could agree with the position adopted by the Commission. *Certified Testing v. Industrial Comm'n*, 367 Ill. App. 3d 938, 947 (2006).

■ We cannot say that the Commission abused its discretion here. We begin with the well-established principle that "an employer takes his employees as he finds them." *Bocian v. Industrial Comm'n*, 282 Ill. App. 3d 519, 528 (1996). Claimant is a smoker and, apparently, was one prior to his first surgery, as his doctor advised him to quit. Given the testimony of Dr. Mather (respondent's expert), it is clear that problems healing after a surgery are part of being a smoker. Respondent asserts that claimant has "engage[d] in deliberate actions to retard recovery from a work related accident" and that it should not be held liable for expenses "associated with such injurious practices." We see no evidence (and respondent provides no record citation to such evidence) that claimant smoked cigarettes for the

purpose of retarding his recovery. In fact, *Gallego v. Industrial Comm'n*, 168 Ill. App. 3d 259, 268-69 (1988), which respondent cites, is distinguishable on this basis, for in that case there was evidence that the claimant was binding his hand in a deliberate attempt to impair circulation and prolong recovery. In this case, it appears the claimant smoked in spite of its potential impact on his recovery, not because of it.

Respondent cites Beebe v. Transport Leasing Contract, No. 99WC66951 (September 20, 2005), a decision of the Commission, in support of its position. Decisions of the Commission are not precedential and thus should not be cited. See *S&H Floor Covering, Inc. v. Workers' Compensation Comm'n*, 373 Ill. App. 3d 259, 266 (2007). Morever, that case, in any event, is distinguishable. In *Beebe*, two doctors instructed the claimant "repeatedly to stop smoking, to exercise, to lose weight, and to stop wearing the CAM boot." *Beebe*, slip op. at ___. The claimant disregarded all of this advice. The Commission determined that the claimant's "persistence in so many injurious practices *** compels the Commission to invoke the sanctions of section 19(d)." *Beebe*, slip op. at ___. However, in so holding, the Commission expressly stated, "We recognize that an employer takes an employee as it finds him, in this case, an overweight smoker, and that these factors alone generally would not justify suspension or reduction of compensation." *Beebe*, slip op. at ___. Respondent fails to acknowledge this limitation on *Beebe*'s reasoning.

Furthermore, claimant did make an unsuccessful attempt to quit smoking. Nothing indicates that this was not a *bona fide* attempt, and, as respondent states, "it is commonly accepted by the medical community that smoking is an addiction." A reasonable person could certainly conclude that claimant should not be penalized when he made a good-faith attempt to prevail over his addiction.

In short, neither the law nor the facts support respondent's position. Claimant's smoking does not rise to the level of an intervening cause, and the Commission did not abuse its discretion in determining that claimant should not be denied recovery because of it. Accordingly, we affirm the Commission's decision on this issue as well as on the two derivative issues that respondent has raised.

## B. Penalties and Fees

■ Respondent also argues that the Commission erred when it imposed penalties (820 ILCS 320/19(k), 19(l) (West 1998)) and awarded attorney fees (820 ILCS 320/16 (West 1998)). Whether to award penalties and fees presents a factual question. *Greaney v. Industrial*

*Comm'n*, 358 Ill. App. 3d 1002, 1024 (2005). We will not disturb the decision of the Commission on these matters unless it is contrary to the manifest weight of the evidence. *McKay Plating Co. v. Industrial Comm'n*, 91 Ill. 2d 198, 209 (1982). Penalties and fees under sections 16 and 19(k) are appropriate where an employer's decision to delay payment of benefits is unreasonable or vexatious. *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 515 (1998). Generally, "[w]hen the employer acts in reliance upon reasonable medical opinion or when there are conflicting medical opinions, penalties ordinarily are not imposed." *USF Holland, Inc. v. Industrial Comm'n*, 357 Ill. App. 3d 798, 805 (2005). The relevant question is "whether the employer's reliance was objectively reasonable under the circumstances." *Electro-Motive Division v. Industrial Comm'n*, 250 Ill. App. 3d 432, 436 (1993). Section 19(l), which is more in the nature of a late fee, allows an award upon a lesser showing, applying when an employer "neglects, or refuses to make payment or unreasonably delays payment 'without good and just cause.' " *McMahan*, 183 Ill. 2d at 515, quoting 820 ILCS 305/19(l) (West 1992). The employer bears the "burden of showing that it had a reasonable belief that the delay was justified." *Roodhouse Envelope Co. v. Industrial Comm'n*, 276 Ill. App. 3d 576, 579 (1995).

Respondent asserts that its denial of benefits was reasonable because it had set forth a meritorious defense "based on the medical opinion of Dr. Mather and existing case law." As we explain above, the "existing case law" upon which respondent relies—namely, *Gallego*, 168 Ill. App. 3d 259, and *Beebe*, No. 99WC66951—is clearly distinguishable. However, Mather's testimony was relatively compelling, even if it did not ultimately persuade the Commission. Accordingly, we hold that respondent could rely upon Mather and that no reasonable person could conclude that respondent was not entitled to do so. Since an abuse of discretion occurs when no reasonable person could agree with the position taken by the Commission (*Certified Testing*, 367 Ill. App. 3d at 947), we are compelled to conclude that the Commission abused its discretion in imposing fees and costs. We reverse its decision in this respect.

## III. CONCLUSION

In light of the foregoing, we reverse the circuit court of Cook County's decision confirming the decision of the Commission insofar as it imposed fees and penalties upon respondent and we affirm in all

other aspects. We remand this cause for further proceedings, **if any**, pursuant to *Thomas*, 78 Ill. 2d 327.

Reversed in part and affirmed in part; cause remanded.

McCULLOUGH, P.J., and HOFFMAN and HOLDRIDGE, JJ., concur.

JUSTICE DONOVAN, concurring in part and dissenting in part:

I concur in the majority's analysis of the issues of injurious practice and causation, but I cannot concur in the majority's decision to reverse the Commission's decision to impose penalties and fees. The majority quite rightly determined that claimant's cigarette smoking constitutes neither an intervening cause that would relieve respondent from liability nor an injurious practice under section 19(d) of the Act (820 ILCS 305/19(d) (West 2004)). Given that, Dr. Mather's opinions, which were offered in support of a position or theory that has no basis in existing law, are inconsequential. The respondent has failed to establish reasonable legal support for its decision to terminate TTD benefits and to deny medical expenses. Denying benefits without a legal basis is certainly unreasonable. The Commission's decision to impose penalties and fees is not against the manifest weight of the evidence. Accordingly, I would affirm the circuit court's decision to confirm the decision of the Commission in its entirety.