(No. 34422.—■■■■■■■■■■■■■■■■)

Michael A. Esposito, Defendant in Error, *vs.* Industrial Commission *et al.*—(Auto Clutch & Parts Service, Inc., Plaintiff in Error.)

*Opinion filed November 20, 1957.*

Vincent F. Kohler, of Chicago, for plaintiff in error.

Jack L. Sachs, of Chicago, (Charles D. Snewind, of counsel,) for defendant in error.

Mr. Justice Schaefer delivered the opinion of the court:

An arbitrator for the Industrial Commission made an award to Michael A. Esposito on account of an accidental injury which he claimed to have sustained on January 17, 1955, during the course of his employment by Auto Clutch & Parts Service, Inc. On review the commission found that on the date in question the relation of employer and

employee existed, and that the employer was operating under the provisions of the Workmen's Compensation Act. The commission also found, however, "that on said date the petitioner did not sustain accidental injuries arising out of and in the course of his employment." Upon that finding it set aside the arbitrator's award. The circuit court of Cook County reversed the decision of the commission and reinstated the award of the arbitrator. We granted the employer's petition for writ of error.

It is the function of the Industrial Commission to draw inferences from the evidence and its decision on a question of fact should not be set aside unless it is manifestly against the weight of the evidence. (*ACF Industries, Inc.* v. *Industrial Com.* 8 Ill.2d 552; *Grollemond* v. *Industrial Com.* 5 Ill.2d 541; *Boutwell* v. *Industrial Com.* 408 Ill. 11.) This rule applies even where, as in this case, the commission reaches a different conclusion from its arbitrator without having heard additional evidence. (*Neumann* v. *Industrial Com.* 396 Ill. 224; *Garbowicz* v. *Industrial Com.* 373 Ill. 268; *Rodriguez* v. *Industrial Com.* 371 Ill. 590.) The issue before us, therefore, is whether the commission's finding is clearly against the weight of the evidence.

In 1931, when he was fifteen years old, Esposito suffered a fracture of the femur above the right knee which resulted in a ten to fifteen degree loss of flexion. While he was in the army his knee ached, and he was placed in a motor pool for this reason. He had been employed by Auto Clutch & Parts Service, Inc., for seven years prior to January 17, 1955. He operated drum lathes, foot riveting machines and automatic riveters. On May 19, 1954, while operating the drum lathes, he twisted his right knee and suffered great pain. He reported the injury to his foreman who sent him to the company's physician. His knee was x-rayed and he received eight or ten "whirlpool bath" treatments. He lost no time at work as a result of this injury.

For two days after the injury of May 19, 1954, Esposito did not work on the foot riveter. Thereafter he did, and he experienced pain in his knee every time he used the foot riveting machine from May 19, 1954, until he entered the hospital on May 9, 1955. When he was assigned to other duties, such as operating the automatic machine which did not require foot pressure, the pain would disappear.

As to the alleged occurrence on January 17, 1955, Esposito testified that on that day while he was operating a foot riveter "my knee was bothering me so much, and it was more noticeable when I was working on it steadily. The more I did this foot riveting, the more it seemed to bother me. The more it seemed to lock." He notified his foreman and asked and was granted permission to work on an automatic riveter instead of the foot riveter. He continued to work without interruption until he entered Hines Veterans Hospital on his own initiative on May 9, 1955. There an operation was performed on his knee and he remained in the hospital until June 13, 1955. He resumed work on August 3, and voluntarily left the employ of the company in September of 1955.

Esposito testified that after the accident in May of 1954, he felt pain whenever he went up or down stairs and whenever he did any foot riveting. The pain became progressively worse until he entered the hospital. He also testified that during that entire period, whenever his knee bothered him the foreman would let him do something other than foot riveting, and that after May of 1954 he had experienced the same kind of trouble until he entered Hines Hospital in May of 1955.

Esposito testified to a conference in August of 1955 with Arthur Gross, a claims examiner for the employer's insurance carrier, in which he told Gross about the incident of May 19, 1954. He also testified that he told Dr. Samuel R. Rubert, who examined him in September of 1955, that he had sustained an accident while at work on May 19,

1954. He did not remember, however, whether he told Gross, Dr. Rubert, or Leonard Hillock, another claims adjuster of the insurance company with whom he conferred in July of 1955, about any incident or accident in January of 1955.

Henry Lewis, Esposito's foreman, testified that he had complained almost daily between May, 1954, and May, 1955, about his right knee, stating that it bothered him whenever he operated the foot riveting machine. Lewis was unable to recall that there was such a complaint on January 17, 1955, although he testified that there could have been. He also testified that Esposito had not requested to be sent to a doctor during the year 1955.

Gross testified that on July 29, 1955, Esposito inquired of the insurance company concerning temporary disability benefits; that he said that he had been injured at work on May 19, 1954, and had recently been hospitalized for an operation. Gross stated that he advised Esposito that a claim based upon an injury occurring in May of 1954 was barred by limitations. Hillock testified that on August 26, 1955, Esposito stated that he had been injured at work on May 19, 1954, had received treatment from Dr. Gurvey and had been discharged a few days later; that he had had trouble thereafter with his knee until he went to Hines Hospital on May 9, 1955; that he had not suffered any further injuries between May, 1954, and August 26, 1955, and that he was disabled from May 9, 1955, to the early part of August. Hillock also testified to a later conversation on August 31, 1955, in which he told Esposito that his claim was barred by limitations.

It thus appears from Esposito's testimony that the occurrence he described as happening on January 17, 1955, was one of a series of recurrent incidents that happened frequently between May 19, 1954, and May 9, 1955. In separate interviews in July and August of 1955, he told two employees of the insurance carrier that he had sustained

an accident on May 19, 1954. He did not recollect whether he told either of them of any incident in January of 1955, and each of them testified that he did not do so. The only traumatic incidents that he mentioned to the two medical experts who examined him were the femur fracture in 1931 and the twisting of the knee in May of 1954. The case histories taken from him by two doctors at Hines Hospital contained no reference to any occurrence in January of 1955.

Claimant suggests that his equivocal testimony at the hearing was the result of confusion on his part as to whether May 19, 1954, or January 17, 1955, constituted the "actionable" accident. To support this suggestion attention is directed to his testimony concerning his conference with Gross in which, after having first said that he told Gross that the only accident he had sustained was the one of May 19, 1954, he corrected himself by saying, "I told him that was the first time that I had an accident." The commission, however, was entitled to take account of and to act upon the inferences that flowed from his undisputed failure to mention any occurrence in January, 1955, to anyone at any time before he filed his claim.

We hold, therefore, that the finding of the commission was not against the manifest weight of the evidence.

The judgment of the circuit court of Cook County is reversed and the decision of the Industrial Commission is confirmed.

*Judgment reversed; decision confirmed.*