SILICA SAND TRANSPORT, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Herman Miller, Appellee).—FRIEDERS TRUCKING, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Herman Miller, Appellee).

Third District (Industrial Commission Division)   Nos. 3—89—0134WC, 3—89—0146WC cons.

Opinion filed April 30, 1990.

Guy C. Fraker, of Costigan & Wollrab, of Bloomington, for Silica Sand Transport, Inc.

Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, and Kevin J. Luther, of Heyl, Royster, Voelker & Allen, of Rockford, for Frieder's Trucking, Inc.

Peter F. Ferracuti, of Law Offices of Peter F. Ferracuti, P.C., of Ottawa, for appellee Herman Miller.

JUSTICE LEWIS delivered the opinion of the court:

An application for adjustment of claim pursuant to the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) was filed by Herman Miller, the claimant, for injuries sustained to his back on December 7, 1984, in the course of his employment with Frieders Trucking, Inc. (Frieders). The claimant had also filed two other claims for workers' compensation against Frieders for back injuries which were incurred while in the course of his employment on July 8, 1983, and on June 12, 1984. All three adjustments for claims

were filed on December 17, 1985. Subsequently, on January 30, 1987, the claimant filed a separate adjustment of claim against Silica Sand Transport, Inc. (Silica), for the same injuries incurred by him on December 7, 1984.

The arbitrator considered all of the claimant's claims at a hearing held on April 6, 1987. The arbitrator found that the claimant's current condition of ill-being was primarily the result of the claimant's accident of December 7, 1984, awarded the claimant temporary total disability benefits (TTD), and determined that this award did not bar a further hearing for a determination of additional TTD and of permanent disability. The arbitrator found that Frieders was the loaning employer and Silica was the borrowing employer of the claimant at the time of the claimant's injury, and that Silica, in its lease agreement with Frieders, had agreed to provide workers' compensation insurance for employees borrowed by Silica from Frieders. However, the arbitrator held that, because Frieders failed to comply with a condition precedent of the lease agreement, Frieders was only entitled to 50% reimbursement from Silica for the benefits paid to the claimant. The arbitrator further held that the notice of the accident was timely given to Frieders and that this notice served as notice to Silica. In addition to awarding the claimant TTD, the arbitrator imposed section 19(*l*) penalties (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(*l*)) in the sum of $2,500 and attorney fees, pursuant to section 16 (Ill. Rev. Stat. 1985, ch. 48, par. 138.16), up to $5,000 against Silica.

A review of the arbitrator's decision was sought before the Industrial Commission. Prior to the review hearing, Frieders filed a petition for reimbursement which was considered by the Commission at the hearing on review. The Commission affirmed the arbitrator's determination that an employer/employee relationship existed between the claimant and both Frieders and Silica on December 7, 1984, and that Silica had borrowed the claimant from Frieders. The Commission determined that the claimant was a loaned employee, notwithstanding Frieders' failure to obtain Silica's prior approval of the claimant as was required under the lease agreement, and Silica's lack of knowledge of the substitution of the claimant for an approved employee. The Commission affirmed the arbitrator's finding that timely notice of the claimant's accident to Frieders served as notice to Silica, and that Silica was not prejudiced by the lack of actual notice. The Commission increased Frieders' reimbursement from Silica from 50% and determined that Frieders was entitled to be wholly reimbursed for payments to the claimant for workers' compensation bene-

fits and for medical expenses. The Commission also found that Frieders was entitled to reimbursement for its expenses and reasonable attorney fees, but because Frieders failed to present evidence upon which to make a determination of attorney fees, the Commission did not award an amount for the attorney fees. The Commission reversed the arbitrator's award of section 19(*l*) penalties and attorney fees pursuant to section 16 against Silica. Lastly, the Commission determined that this cause should be remanded to the arbitrator for further proceedings for a determination of the claimant's entitlement to permanent disability in accordance with the holding of *Thomas v. Industrial Comm'n* (1980), 78 Ill. 2d 327, 399 N.E.2d 1322.

On appeal, the circuit court confirmed the Industrial Commission's decision. Separate appeals were filed in this court by Frieders and by Silica and, upon the motion of the parties, these appeals were consolidated for consideration. The issues raised by Silica on appeal are whether the Industrial Commission's determination that a loaned employee relationship existed between Silica and the claimant was against the manifest weight of the evidence, and whether Silica was given timely notice of the claimant's accident. The issue raised by Frieders on appeal is whether the Industrial Commission erred in denying Frieders reimbursement for its reasonable attorney fees.

At the hearing before the arbitrator, the claimant testified that on December 7, 1984, he was employed by Frieders as a truck driver. He had been hired by Frieders in April 1983, and prior to that time, he had been employed by Silica. When the claimant went to work for Frieders, he was given a preemployment physical which showed that he had no preexisting back problems.

On July 8, 1983, while unloading his truck, the claimant suffered a back injury. The claimant reported his injury to Frieders. As a result of this injury, the claimant was off work for a week and was prescribed pain pills and muscle relaxants. When he returned to work a week later, his back appeared to be normal.

The claimant testified that on June 21, 1984, he again hurt his back while unloading empty pallets at Frieders' garage. He did not consult a doctor for this injury, but he took the remaining pain pills previously prescribed for his prior back injury. He did not miss any work as a result of this accident.

On December 7, 1984, the claimant came into Frieders' garage to wash his truck. Joseph Frieders asked the claimant if he would "make a run," since Jack Ellis, who normally was scheduled to do the job, was unavailable because of personal reasons. The claimant agreed and drove to the Indiana/Illinois border, where he picked up

Ellis' truck. The claimant drove the truck to Michigan City, Indiana, and obtained a load of sand which he transported to Grand Rapids, Michigan. After the claimant unloaded the sand with a 20-foot product hose, the claimant attempted to dislodge the hose from the snow and gravel where it had become caught. When the claimant pulled the hose, he fell to his knees with a severe pain in his back. The claimant managed to drive his truck back to Frieders' garage, and when he arrived home, he notified Joseph Frieders of his accident. Subsequently, the claimant underwent an unsuccessful chemonucleolysis on his spine in 1985, and, in 1986, a laminectomy was performed. The claimant had not worked since December 8, 1984.

The claimant admitted that, although he drove the truck on December 7, 1984, he signed Jack Ellis' name to the bill of lading. The claimant had been advised to sign Ellis' name to avoid inner-office problems. However, the claimant was paid for the trip.

Marilyn Risch, president of Silica, testified that a one-year lease agreement between Silica and Frieders was in effect on December 7, 1984, and that the lease agreement was substantially similar in its provisions to other contracts entered into by Frieders and Silica in the past. The lease agreement provided that, upon Silica's request, Frieders would provide the equipment and the driver to transport Silica's goods from one destination to another. Silica had its own trucks and drivers, but, on occasion, when extra trucks and drivers were needed, Silica would use Frieders' trucks and drivers, per the parties' contract. The lease agreement further provided that Frieders was the registered owner of the leased vehicles, but that Silica was to have exclusive "possession, control and use" of the vehicles; that Frieders was responsible for fire, theft or damage to the trucks and for the maintenance and storage of the vehicles; that Frieders was to pay for all State and Federal licenses and permits; that Frieders was responsible for any fines assessed which were due to improper equipment or the operation of the leased equipment; that Frieders' vehicles were to be painted and lettered with Silica's colors; that Frieders was responsible for the hiring, compensating and discharging of the employees operating the vehicles; and that Silica was responsible for providing insurance, including workers' compensation insurance, unless Frieders elected to reject Silica's insurance coverage. If Frieders refused Silica's insurance, Frieders was to sign a hold harmless agreement and was to provide the same insurance coverage as Silica had offered. Frieders elected to accept Silica's insurance coverage, and Silica deducted for workers' compensation premiums from its payments to Frieders after the work was performed.

According to Risch, workers' compensation premiums were deducted from their payment to Frieders for the transporting of the load of sand on December 7, 1984, but Silica's insurance carrier had denied the claimant coverage of his claim.

The lease agreement between Silica and Frieders also contained the following provision:

> "No leased vehicle shall be operated by any person other than an employee of contractor [Frieders] having been approved and on file by the Company [Silica], as required by the Interstate Commerce Commission."

Risch testified that the language "having been approved and on file" with Silica meant that the Frieders' driver had come into Silica's office and had filled out an application, had had an Interstate Commerce Commission (ICC) physical, had had a "road test," had had a written test, had had an inquiry made into past employers, and had supplied any other documents Silica might require. The claimant had not done any of these and was not on the approved driver list for Silica. Risch admitted that the claimant had worked for Silica for five years and that he had voluntarily left her employment on April 1, 1983.

Risch had not known that the claimant had driven for Silica as a loaned employee until December of 1985, when her secretary received a call that the claimant had been injured on December 7, 1984, while driving a truck for Silica. According to Silica's records for that date, Jack Ellis' name appeared on their documents. Risch admitted that the mileage record of December 7, 1984, had Jack Ellis' name on it, but she did not believe the handwriting was Ellis.' Risch also admitted that it was possible that other nonapproved drivers had been substituted for an approved driver on previous occasions; however, Silica was unaware of when this may have occurred.

Joseph Frieders, the president of Frieders, testified that Frieders had done business with Silica for approximately 18 years. Frieders also provided trucks and drivers to other companies. Frieders corroborated that under the parties' contract, he was responsible for the hiring, the compensating, and the discharging of employees, and for operating and servicing the equipment; but, that it was Silica's responsibility to provide the workers' compensation insurance.

Frieders' understanding of the phrase "approved and on file" contained in the lease agreement was that the driver had had a Department of Transportation physical, had had a "road test" and a written test on file, and had met the other requirements of the ICC. The claimant had met all of those requirements while he was em-

ployed by Frieders, and the documentation showing compliance with these requirements was kept in Frieders' office.

Frieders testified that the claimant had driven for Silica on three previous occasions: on December 27, 1983, on December 30, 1983, and on June 12, 1984. On those dates, the claimant had substituted for the driver who regularly ran those trips. According to Frieders, other drivers had been substituted for the trips for Silica, and it was customary for the substituting driver to sign the regular driver's name to the necessary documents for the trip. Frieders had discussed substituting drivers with Silica's operations manager or dispatcher on different occasions during the years, but he could not recall a specific date on which he had done so. Frieders named Chuck Graves and Mel Ahrens as the Silica employees with whom he had discussed substituting drivers, and that these persons had agreed to the substitution. Frieders stated that it was Silica's operations managers who had told him that the substituted drivers should sign the regularly assigned driver's name to the trip documents to avoid internal problems with Silica. According to Frieders, if Silica was "in a bind" about getting a load transported, Silica was more lenient about using a substitute driver, since Silica's main concern was getting the job done.

When Frieders was shown the mileage sheet for December 7, 1984, Frieders acknowledged that Ellis' name appeared on the document, but he believed that the handwriting was his own. Frieders confirmed that it was the claimant who had driven the truck for Silica on December 7, 1984, and not Ellis, and that Frieders had received payment from Silica for this trip. Frieders could not recall specifically discussing the substitution of the claimant for Ellis on December 7, 1984, with Silica.

The remaining evidence presented at the hearing before the arbitrator consisted of the medical records of the claimant regarding his injury, and since the claimant's injury is not at issue here, we need not reiterate that evidence. At the review hearing before the Industrial Commission, the claimant testified that he had not returned to any gainful employment, and he presented the additional medical expenses incurred by him since the arbitration hearing.

On appeal, neither Silica nor Frieders contests the claimant's award of workers' compensation benefits, but they dispute who is liable for the payment of those benefits. Silica contends that the Industrial Commission's determination that Frieders, the loaning employer, was entitled to reimbursement from Silica, the borrowing employer, for compensation payments and medical expenses made to the claim-

ant was against the manifest weight of the evidence. The thrust of Silica's argument is that because Frieders violated the parties' express agreement which set forth the conditions for borrowing employees, a lending situation did not arise under the contract and Silica was not liable as the borrowing employer.

Our first consideration is whether the evidence supported the Industrial Commission's conclusion that Silica was a borrowing employer and Frieders was a lending employer. Silica claims that the facts of this case do not support this determination.

■ A loaned employee's status is a question of fact for the Industrial Commission, and the determination made by the Industrial Commission will not be overturned unless its finding is against the manifest weight of the evidence. (*A.J. Johnson Paving Co. v. Industrial Comm'n* (1980), 82 Ill. 2d 341, 412 N.E.2d 477.) According to Larson, "[t]he closest cases are those in which the business of the general employer consists largely of the very process of furnishing equipment and employees to others" (1C A. Larson, Workmen's Compensation §48.23, at 8—458 (1986)), a situation such as exists in this case. The most important factor in determining a loaned employee's status is whether the borrowing employer had the right to control the loaned employee's work. (*A.J. Johnson Paving Co.*, 82 Ill. 2d 341, 412 N.E.2d 477; *Area Transport Co. v. Industrial Comm'n* (1984), 123 Ill. App. 3d 1096, 465 N.E.2d 533.) However, also to be considered is whether a contract of hire, either express or implied, existed between the borrowing employer and the employee. *A.J. Johnson Paving Co.*, 82 Ill. 2d 341, 412 N.E.2d 477.

■ The evidence in this case supported the Industrial Commission's finding that the claimant was a loaned employee and that Silica was the borrowing employer. First, there was sufficient evidence to show that Silica had the right to control the manner of work performed. The lease agreement itself stated that Silica had "exclusive possession, control and use" of the vehicles borrowed from Frieders. Silica also, under the lease agreement, required Frieders to paint the trucks borrowed by Silica with Silica's logo. Silica was responsible to pay not only workers' compensation insurance on the drivers provided by Frieders, but Silica had also assumed responsibility for other insurance required by the ICC. Likewise, although this provision was not complied with in this case, Silica normally had the right to preapprove the drivers who were borrowed. Additionally, since the claimant had previously worked for Silica, it is a reasonable inference that the claimant would have been an acceptable driver to Silica. Silica also instructed the driver of the truck as to the pick-up point and

the final destination of the load to be transported. We also note that it was while the claimant was performing Silica's work of unloading the sand that the claimant was injured.

■ With regard to the existence of a contract for hire between the claimant and Silica, we further conclude that the evidence supported the determination that a contract for hire did exist. Frieders' business was to supply drivers and trucks to businesses who needed goods transported and lacked sufficient equipment to do so, and Frieders had expressly contracted with Silica for this service under the lease agreement. Because of the nature of Frieders' business, it could be inferred that the claimant agreed to drive for others. It can also be inferred that the claimant knew that the trip of December 7, 1984, was for Silica, as the claimant obtained Jack Ellis' truck for the trip, and this truck was painted with Silica's colors. Thus, the claimant either had expressly agreed to a contract of hire with Silica through Frieders' lease agreement, or he had impliedly agreed by his actions. Therefore, the Commission's finding that there was a lending/borrowing relationship between Silica and Frieders was not against the manifest weight of the evidence.

■ Silica has also argued that Frieders' violation of the provision of the lease agreement requiring Silica's preapproval of the borrowed driver negated the claimant's loaned employee status in its entirety, as this provision was a "condition precedent" of the contract. We find no merit to Silica's argument. Usually, a failure of one party to perform a "condition precedent" of a contract excuses the other party from fulfilling its obligations under the contract, and it is determined that there is no contract as a result. Here, the contract had been substantially performed in that Frieders had done the work requested by Silica and Silica had paid Frieders for the work. It would be unfair and unrealistic to determine, after Silica had obtained the benefits of the contract, that the provision of which it complains was a substantial one which excused Silica's performance under the contract and that a loaning situation did not exist. This is especially true, where, as here, there is no evidence that this provision of the lease agreement was strictly enforced.

■ Having determined that Silica was a borrowing employer and Frieders a loaning employer of the claimant, we must next determine which employer was liable for the payment of the claimant's workers' compensation benefits. Generally, when a lending employer and a borrowing employer situation exists, the statute provides that both employers are jointly and severally liable to the employee, but as to the liability between the two employers, the borrowing employer is

primarily liable and the lending employer is secondarily liable. (Ill. Rev. Stat. 1985, ch. 48, par. 138.1(a)(4); *A.J. Johnson Paving Co. v. Industrial Comm'n* (1980), 82 Ill. 2d 341, 412 N.E.2d 477.) If the borrowing employer fails to pay the benefits awarded to the claimant, then the loaning employer must pay and the loaning employer has the right to seek reimbursement from the borrowing employer. (*Fort Dearborn Cartage Co. ex rel. Chubb & Son, Inc. v. Rooks Transfer Co.* (1985), 136 Ill. App. 3d 371, 483 N.E.2d 618.) However, the statute also provides that this right to reimbursement can be waived by an agreement "to the contrary" between the two employers. Ill. Rev. Stat. 1985, ch. 48, par. 138.1(a)(4); *Fort Dearborn Cartage Co. ex rel. Chubb & Son, Inc.*, 136 Ill. App. 3d 371, 483 N.E.2d 618.

■ Therefore, it must be determined whether the lease agreement between Frieders and Silica was an "agreement to the contrary." Silica and Frieders' lease agreement provided that Silica was to furnish workers' compensation for employees loaned to Silica by Frieders. The lease agreement stated as follows:

"Contractor [Frieders] agrees to pay $250.00 deductible for each accident, which will be deducted from the Contractor's revenue. Company [Silica] shall provide a written explanation and itemization of any deductions for Cargo loss or damage, or PL & PD, from compensation due the Contractor. Insurance coverage will terminate at Contractor's termination date. If Contractor refuses Company insurance protection, Contractor must sign a Hold Harmless Agreement and provide the Company the same coverage as shown on the Certificate of Insurance, and show Company as an added insured on Contractor's policy. Said Hold Harmless Agreement attached as 'Schedule B.'

(a) Contractor, [signed] Joseph F. Frieders, requests:
_____, refuses:
Company's Aetna Life & Casualty Insurance protection for Workmen's Compensation Policy No. 08C32850CCA, at the rate of 5.88 per hundred."

Clearly, a fair and reasonable construction of this language was that Silica was liable for workers' compensation and that Frieders accepted Silica's insurance coverage.

Since the lease agreement imposed the same liability as section 1(a)(4), in that Silica, as the borrowing employer, was to assume the liability for the employees borrowed from Frieders, the lease agreement was not an "agreement to the contrary" which shifted liability

for workers' compensation benefits from Silica to Frieders. Therefore, because there was no contract to the contrary, Silica, as a borrowing employer, was liable for the claimant's workers' compensation benefits under section 1(a)(4) as well as under the contract.

We also note that the Commission and the arbitrator determined that Frieders had breached the parties' contract. If, *arguendo*, Frieders breached the parties' contract, Silica's recourse is in a cause of action for breach of contract; however, as this is not the forum for a breach of contract case, we will not discuss this matter further or determine the merits of such an action here.

Silica's second issue on appeal is that it was not provided timely notice of the claimant's accident as required under section 6(c) of the Workers' Compensation Act. (Ill. Rev. Stat. 1985, ch. 48, par. 138.6(c).) Silica contends that it received notice approximately one year after the accident, more than the 45 days' notice required by the statute, and that, therefore, the claimant's recovery against Silica was barred, or alternatively, that it was unduly prejudiced by the lack of actual notice.

Section 6(c) provides in pertinent part as follows:

"Notice of the accident shall be given to the employer as soon as practicable, but not later than 45 days after the accident. ***

* * *

No defect or inaccuracy of such notice shall be a bar to the maintenance of proceedings on arbitration or otherwise by the employee unless the employer proves that he is unduly prejudiced in such proceedings by such defect or inaccuracy.

Notice of the accident shall give the approximate date and place of the accident, if known, and may be given orally or in writing." (Ill. Rev. Stat. 1985, ch. 48, par. 138.6(c).)

This rule has been held to be jurisdictional and a prerequisite for maintaining a proceeding under the statute; however, a claim is only barred if no notice whatsoever has been given. (*Luckenbill v. Industrial Comm'n* (1987), 155 Ill. App. 3d 106, 507 N.E.2d 1185.) If some notice has been given, but the notice is defective or inaccurate, then the employer must show that he has been unduly prejudiced. (*Luckenbill*, 155 Ill. App. 3d 106, 507 N.E.2d 1185.) Here, timely notice was given to Frieders; however, it was not until Frieders' insurance carrier called Silica, approximately one year after the accident, that Silica was given notice.

The statute and case law do not provide guidance in the situation, such as here, where there is a lending employer and a borrow-

ing employer, as to which employer an injured employee must give notice of an accident. In many cases, the employee is injured while on the premises of the borrowing employer, and the borrowing employer is either present or is notified by the employee at the time the employee received his injury, thereby providing sufficient notice of the accident. In this case, neither employer nor any of its representatives were present to witness and document the claimant's injury.

■ The Industrial Commission found that Frieders was given timely notice of the claimant's injury and that this notice served as notice to Silica. The Commission further found that Silica was not prejudiced by the "lack of actual notice." We find, under the circumstances presented here, that the Commission's determination was correct. In this case, timely notice was given to Frieders by the claimant. The claimant cannot be expected to know the legal ramifications of which employer he should notify, and to hold that the failure of the claimant to notify Silica would bar the claimant's recovery would be inherently unfair. We find that the notice given by the claimant to Frieders must be construed to be an inaccurate or defective notice to Silica, but was otherwise properly given, and that Silica must show that it was unduly prejudiced by the defective or inaccurate notice.

Larson has stated, in his discussion on excusing failure to provide proper notice, as follows:

> "As to notice of injury, however, both courts and legislatures have been inclined to ask whether either of the two purposes of the notice statute has miscarried because of the lack of literal compliance [with the notice provisions], the two purposes being the facilitation of prompt medical attention and the provision of opportunity for immediate investigation of the circumstances of the accident." (2B A. Larson, Workmen's Compensation §78.30, at 15—108, 15—110.)

Thus, in considering whether Silica was unduly prejudiced by lack of actual notice, we must consider whether the twofold purpose of giving notice was met under the circumstances presented here.

■ The evidence in this case revealed that the claimant received prompt medical attention, thereby alleviating the parties' potential liability. Further, it is not apparent from the record that the notice given to Frieders prevented or inhibited the opportunity to investigate the circumstances of the claimant's accident. Frieders cannot have known with any certainty that it would not be held liable for the payment of the claimant's workers' compensation benefits. Thus, it can be inferred that Frieders had thoroughly investigated the cir-

cumstances of the claimant's accident to assure that workers' compensation benefits were warranted in this case. Silica does not contend that Frieders did not do so, but simply argues that it was "totally deprived of any opportunity to preserve a defense." However, Silica was present at all the proceedings conducted in this case, and it does not appear from the record that Silica was unable to present an adequate defense. Further, Silica's claim of undue prejudice is undermined by the fact that Silica did not appeal the Industrial Commission's determination that the claimant's injuries were compensable under the Workers' Compensation Act. Silica has not met its burden of proof of demonstrating undue prejudice since Silica has only speculated that it was prejudiced, and it has not supported its speculation with factual prejudice. (*McLean Trucking Co. v. Industrial Comm'n* (1978), 72 Ill. 2d 350, 381 N.E.2d 245.) Therefore, we conclude that the Industrial Commission's determination that notice of the claimant's accident to Frieders served as notice to Silica was not erroneous.

■■■ Lastly, we consider the issue raised by Frieders on appeal. Frieders contends that the Industrial Commission erred when it was denied reimbursement from Silica for its reasonable attorney fees pursuant to section 1(a)(4). (Ill. Rev. Stat. 1985, ch. 48, par. 138.1(a)(4).) Our reading of the Industrial Commission's order compels us to conclude that Frieders misread what the Industrial Commission decided regarding this issue. In the Commission's order, it stated:

> "Pursuant to [section] 1(b)(4) of the Act, Frieders is also entitled to reimbursement from Silica Sand for reasonable attorneys' fees and expenses in any hearings before the Commission to secure such reimbursement. However, there is no evidence from which the Commission can determine the amount of reasonable attorneys' fees and expenses."

From this language it is apparent that the Commission did not deny Frieders reimbursement for its attorney fees, but that the Commission lacked adequate information upon which to base an award. The sole evidence presented by Frieders regarding attorney fees was the following statement contained in its petition for reimbursement: "Reasonable Attorney Fees *** $2,925.92." This information was insufficient to support its request for attorney fees and expenses or to show the reasonableness of the amount requested.

The language of the statute provides that a loaning employer is entitled to reimbursement for "reasonable attorneys' fees." (Ill. Rev. Stat. 1985, ch. 48, par. 138.1(4).) Research of what is meant by "rea-

sonable attorneys' fees" fails to disclose any workers' compensation cases on this; however, logic dictates that the standard of what is reasonable for attorney fees in other cases is appropriate in workers' compensation cases. In determining the reasonableness of attorney fees, it has been held that factors to be considered include the skill and standing of the attorney employed, the nature of the cause and the complexity of the issues, the time and labor required, and the usual and customary charge in the community. See *Baker v. City of Granite City* (1983), 112 Ill. App. 3d 1096, 446 N.E.2d 531.

Frieders did not present any evidence as to the number of hours spent by its attorney, as to the type and the necessity of the services rendered, or as to the hourly rate assessed for the services performed. The burden of showing the reasonableness of the attorney fees was Frieders and Frieders did not provide sufficient proof of its claim. The Industrial Commission's determination that the information presented was insufficient to make an award of attorney fees was therefore not erroneous.

We note that Frieders contends that the Commission should have awarded the amount of attorney fees specified in its petition for reimbursement, without justification of its reasonableness, as the reasonableness of the attorney fees was never disputed. Since Silica challenged Frieders' right to any reimbursement and denied that it was a borrowing employer, it cannot be said that the attorney fees were not in dispute.

For the foregoing reasons, the judgment of the circuit court of La Salle County confirming the Industrial Commission's decision is affirmed.

Affirmed.

BARRY, P.J., and McNAMARA, WOODWARD, and McCULLOUGH, JJ., concur.