ROGER YOUNG, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Caterpillar Tractor Co., Appellee).

Third District (Industrial Commission Division)   No. 3—92—0783WC

Opinion filed August 6, 1993.

Patrick J. McNamara, of Schenk, Duffy, Quinn, McNamara, Phelan, Carey & Ford, of Joliet, for appellant.

Timothy J. Rathbun and William P. Mullarkey, both of McKeown Law Office, of Joliet, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Roger Young, sought benefits pursuant to the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.8 *et seq.*) (the Act) for a work-related hearing loss. Young was employed by Caterpillar Tractor Co. as a welder. The parties stipulated to all of the evidence, including the fact that this was a hearing-loss case and that Young's hearing loss was causally related to his employment. The parties also stipulated that the only issues were the nature and extent of Young's hearing loss and the proper application of the formula for determining hearing loss. Also introduced into evidence by stipulation were various audiograms.

An audiogram taken by Caterpillar on May 11, 1967, disclosed the following hearing loss in the left ear: 10 decibels at 1,000 HZ; 10 decibels at 2,000 HZ; and 20 decibels at 3,000 HZ. In the right ear, the losses shown were: 5 decibels at 1,000 HZ; 10 decibels at 2,000 HZ; and 25 decibels at 3,000 HZ.

An audiogram by respondent on June 4, 1979, disclosed the following hearing loss in the left ear: 15 decibels at 1,000 HZ; 20 decibels at 2,000 HZ; and 55 decibels at 3,000 HZ. In the right ear the losses shown were: 10 decibels at 1,000 HZ; 10 decibels at 2,000 HZ; and 50 decibels at 3,000 HZ.

Other audiograms of Young's hearing taken at work on June 26, 1984, September 10, 1985, and November 17, 1986, showed continued deterioration of his hearing, especially at upper frequencies.

On September 14, 1987, an audiogram was taken at Young's request by Joliet Audio Vestibular Laboratories. This audiogram disclosed the following hearing loss in the left ear: 20 decibels at 1,000 HZ; 40 decibels at 2,000 HZ; and 65 decibels at 3,000 HZ. The hearing loss in the right ear was: 20 decibels at 1,000 HZ; 25 decibels at 2,000 HZ; and 60 decibels at 3,000 HZ.

Another audiogram was taken by Joliet Audio Vestibular Laboratories on June 1, 1989. The results indicated the following hearing loss in the left ear: 25 decibels at 1,000 HZ; 40 decibels at 2,000 HZ; and 70 decibels at 3,000 HZ. In the right ear the losses were:

25 decibels at 1,000 HZ; 20 decibels at 2,000 HZ; and 60 decibels at 3,000 HZ.

The arbitrator determined that Young had sustained a hearing loss of 9.1% in the right ear and 27.3% in the left ear, based on the June 6, 1989, audiogram. The arbitrator also ruled that the only audiogram prior to 1975, which was taken on May 11, 1967, disclosed no hearing loss for which Caterpillar Tractor would be entitled to credit. The credit to which the arbitrator referred arises because of a provision in the Act which provides that an employer will not be liable for any hearing loss occurring prior to July 1, 1975.

On review before the Industrial Commission (the Commission), Caterpillar Tractor argued that it was entitled to credit for any pre-1975 hearing loss, regardless of whether such loss would have been compensable under the Act. Young maintained that Caterpillar would be entitled to credit for any pre-1975 hearing loss only if such loss would have been compensable under the Act. The Commission agreed with Caterpillar, reasoning that section 8(d)(16)(d) of the Act did not include the term "compensable." The Commission determined that Young had sustained a 3.09% compensable hearing loss in his left ear, and no compensable hearing loss in his right ear.

The circuit court confirmed the decision of the Commission, finding the rules of the Industrial Commission and the statute were correctly applied, and that the Commission's decision was not against the manifest weight of the evidence.

On appeal, Young argues that the Commission erred in determining that Caterpillar was entitled to credit for any hearing loss Young suffered prior to July 1, 1975. Specifically, Young maintains that Caterpillar is entitled to credit only for *compensable* hearing loss occurring prior to July 1, 1975.

■■ Section (8)(d)(16) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(d)(16)) provides in pertinent part:

> "For the permanent partial loss of use of a member or sight of an eye, or hearing of an ear, compensation during that proportion of the number of weeks in the foregoing schedule provided for the loss of such member or sight of an eye, or hearing of an ear, which the partial loss of use thereof bears to the total loss of use of such member, or sight or eye, or hearing an ear.
>
> (a) Loss of hearing for compensation purposes shall be confined to the frequencies of 1,000, 2,000 and 3,000 cycles per second. Loss of hearing ability for frequency tones above

3,000 cycles per second are not to be considered as constituting disability for hearing.

(b) The percent of hearing loss, for purposes of the determination of compensation claims for occupational deafness, shall be calculated as the average in decibels for the thresholds of hearing for the frequencies of 1,000, 2,000 and 3,000 cycles per second. Pure tone air conduction audiometric instruments, approved by nationally recognized authorities in this field, shall be used for measuring hearing loss. *If the losses of hearing average 30 decibels or less in the 3 frequencies, such losses of hearing shall not then constitute any compensable hearing disability.* If the losses of hearing average 85 decibels or more in the 3 frequencies, then the same shall constitute and be total or 100 percent compensable hearing loss.

(c) In measuring hearing impairment, the lowest measured losses in each of the 3 frequencies shall be added together and divided by 3 to determine the average decibel loss. For every decibel of loss exceeding 30 decibels an allowance of 1.82% shall be made up to the maximum of 100 percent which is reached at 85 decibels.

(d) If a hearing loss is established to have existed on July 1, 1975 by audiometric testing the employer shall not be liable for the previous loss so established nor shall be liable for any loss for which compensation has been paid or awarded." (Emphasis added.)

Sections 7130.20 and 7130.30 of the Industrial Commission rules provide in pertinent part:

"(a) The Industrial Commission shall use the following rebuttable presumptions to determine percentage loss of hearing in cases where the hearing loss was caused by exposure between July 1, 1975, and September 15, 1980:

The percentage loss of hearing shall be calculated using the average, in decibels, of the thresholds of hearing for the frequencies of one thousand, two thousand and three thousand cycles per second. If such losses of hearing average thirty decibels American National Standards Institute (ANSI) or less in the three frequencies, such losses of hearing shall not constitute any hearing disability. If the losses of hearing average eighty-five decibels (ANSI) or more in the three frequencies, such losses of hearing shall constitute total loss of

hearing. Every average decibel loss exceeding thirty decibels (ANSI) shall constitute 1.82 percent of loss of hearing.

\* \* \*

An employer shall be liable for the entire occupational deafness to which his employment contributed unless the employer can establish the extent of Petitioner's hearing loss prior to July 1, 1975. If the employer can establish prior hearing loss, the employer shall only be liable for the hearing loss caused by exposure to employer's noise after July 1, 1975."

Under the statute and the Commission rules, losses of hearing averaging 30 decibels or less do not constitute any compensable hearing disability.

In the present case, the arbitrator based Young's award on the following calculations:

### LEFT EAR

| | | |
|---|---|---|
| 6-06-89 | (25+40+70)/3 = 45.0 - 30 = 15 x 1.82 = | 27.30% |
| 5-11-67 | (10+10+20)/3 = 13.3 - 30 = 0 x 1.82 = | 0 |
| | | 27.30% |

### RIGHT EAR

| | | |
|---|---|---|
| 6-06-89 | (25+20+60)/3 = 35 - 30 = 5 x 1.82 = | 9.10% |
| 5-11-67 | ( 5+10+25)/3 = 10 - 30 = 0 x 1.82 = | 0 |
| | | 9.10% |

In determining the amount of credit to be given Caterpillar for Young's pre-1975 hearing loss, the arbitrator subtracted 30 from the average loss disclosed by the 1967 audiogram. This has the effect of giving Caterpillar credit only for that portion of the pre-1975 loss which would be compensable under subsection (c), which provides that hearing losses of 30 decibels or less constitute no *compensable hearing disability*. The arbitrator's method of calculation thus effectively interpreted section 8(d)(16)(d) to mean that the employer would not be liable for any *compensable* loss occurring prior to July 1, 1975. Such interpretation is not supported by a plain reading of the statute. Section (d) relieves the employer of liability for *any hearing loss* prior to July 1, 1975. Had the legislature wished to relieve the employer of liability only for *compensable* hearing loss, it could have easily done so by including such language in the statute.

■ The Commission used the following calculations to determine Young's compensable hearing disability:

## LEFT EAR

6-06-89 $(25+40+70)/3 = 45$ (average hearing loss as of 6-6-89)

5-11-67 $(10+10+20)/3 = 13.3$ (average hearing loss as of 5-11-67)

$45-13.3 = 31.7$ (average loss since 1975) $- 30 = 1.7 \times 1.82 = 3.09\%$

## RIGHT EAR

6-06-89 $(25+20+60)/3 = 35$ (average hearing loss as of 6-6-89)

5-11-67 $(5+10+25)/3 = 10$ (average hearing loss as of 5-11-67)

$35-10 = 25$ (average loss since 1975) $- 30 = -5\ 0\%$

The Commission first determined the *net* hearing loss since July 1, 1975, and then subtracted the 30 decibel figure set forth in section 8(d)(16)(b) to determine the degree of compensable hearing disability. We believe that the Commission's calculations comport with the plain language of the statute and its most logical interpretation. A plain reading of section 8(d)(16)(d) discloses a legislative intent that employers not be held liable for *any* hearing loss occurring prior to July 1, 1975.

Young points to two previous unreported Industrial Commission cases wherein the Commission ostensibly calculated compensable hearing loss in the same manner as did the arbitrator in the present case. Decisions of the Commission in unrelated cases have no precedential impact on cases before this court, and no bearing on our resolution of the issue at hand. We conclude that under section 8(d)(16)(d), an employer is not liable for any hearing loss attributable to injury arising prior to July 1, 1975, and that compensable hearing loss after July 1, 1975, is that amount of hearing loss occurring after July 1, 1975, in excess of 30 decibels.

We are cognizant of the fact that our holding regarding the calculation of compensable hearing loss does not comport with the method of calculation used by the Commission in our recent case of *Wagner Castings Co. v. Industrial Comm'n* (1993), 241 Ill. App. 3d 584, 609 N.E.2d 397. The issue raised in the present case was not raised in *Wagner Castings*, however, and so was not properly before us in that case. Consequently, *Wagner Castings* constitutes no authority supporting any method of calculation other than that determined in the present case.

For the foregoing reasons, we affirm the decision of the circuit court of Will County.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD and SLATER, JJ., concur.