S&H FLOOR COVERING, INC., Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Rick Gastineau, Appellee).

Fourth District (Illinois Workers' Compensation Commission Division)
No. 4—06—0245WC

Argued January 18, 2007.—Opinion filed February 16, 2007.

260

DONOVAN, J., specially concurring.

Karen L. Kendall, Brad A. Elward (argued), Bradford B. Ingram, and James M. Voelker, all of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

Jean A. Swee (argued), of Williams & Swee, Ltd., of Bloomington, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Employer, S&H Floor Covering, Inc., appeals from the February 22, 2006, decision of the circuit court of McLean County that affirmed the October 27, 2005, decision of the Illinois Workers' Compensation Commission (Commission). The Commission's decision reversed the findings of the arbitrator as to notice and causal connection and awarded claimant $20,461 in medical expenses, temporary total disability (TTD) in the amount of $500 per week for a period of $16^3/_7$ weeks, and $450 per week for a period of 40 weeks, representing 20% loss of use of the right leg. Employer appeals, arguing the claimant did not provide employer with notice of his work-related accident within the 45-day period prescribed by section 6(c) of the Workers' Compensation Act (Act) (820 ILCS 305/6(c) (West 2004)) and (2) the Commission's decision that claimant suffered from a work-related accident

arising out of and in the course of his employment was against the manifest weight of the evidence. For the reasons that follow, we affirm.

On September 16, 2002, claimant filed two applications for adjustment of claim—one for an accident occurring on July 23, 2001 (No. 02 WC 52682), while working for Cushing Commercial Carpet, and one for an accident occurring on August 2, 2002, while working for employer (No. 02 WC 52683). Claimant's claims were consolidated and heard before the arbitrator. The arbitrator denied each of claimant's applications. The Commission affirmed and adopted the arbitrator's decision with respect to No. 02 WC 52682 but reversed the arbitrator's decision as to No. 02 WC 52683. The latter is the subject of this appeal.

Before the arbitrator, claimant testified he laid commercial flooring as a member of a union for the past 12 years. Claimant testified he spent most of his workday, approximately five hours, kneeling. In the course of a day, he testified he would ascend from a kneeling position approximately 200 times. In addition, claimant testified he utilized a knee kicker on his right knee. Claimant testified he suffered an injury to his left knee in March 1999, while working for employer. Claimant testified he was treated by his family physician and received workers' compensation benefits for his injury.

Claimant testified he began working for employer in 1999. However, he was almost exclusively employed by Cushing Commercial Carpets from early 2001 until the end of July 2001, before returning to employer in August 2001. Claimant testified that in August 2001, he began experiencing aching in his right knee that progressively worsened. Claimant testified the pain was bad, but he continued to work, dealing with the pain.

Claimant testified he last worked for employer on August 2, 2002. After work that day, claimant testified he drove to Wichita, Kansas, to install flooring in his nephew's girlfriend's home. However, upon arriving in Wichita, claimant testified he was barely able to walk because of pain in his right knee and was not able to begin installation of the flooring for a week. Even then, claimant testified he was unable to finish the installation because of his knee pain. He testified he did not seek medical attention while in Wichita.

Claimant testified he returned to Illinois and saw Dr. Mark Hanson, an orthopedic surgeon, on August 28, 2002. Claimant testified he telephoned Sandy at employer's office a few days after seeing Dr. Hanson and explained to her he was having knee problems that would require surgery. After knee surgery that was performed on October 29, 2002, claimant testified he still experiences constant pain in his right knee, can no longer kneel, and feels pain when walking. Claimant

testified although he had been released to return to work without any restrictions, he has not done so. Claimant testified it is his desire to wait to return to work until his workers' compensation case is resolved.

Craig Jones, a foreman for Cushing Commercial Carpets, testified he worked with claimant in the summer of 2002. Jones testified he did not have any conversations with claimant regarding any problems claimant was having with his right knee. Jones testified he spoke with claimant via telephone in late September 2002. Claimant told Jones he was not working because he had hurt his knee working on a job for a relative in Tennessee. Jones testified he had seen claimant limp after standing from a kneeling position but that the limping would subside.

John Hunt, owner of employer, testified he saw claimant on August 2, 2002. Hunt testified he gave claimant his paycheck and attempted to persuade claimant to forgo his out-of-state trip and remain in Illinois to continue working. Claimant responded that he was committed to his trip. Hunt then told claimant that work would be waiting for claimant upon his return on August 12, 2002. Hunt testified claimant did not make any claims regarding his knees. Hunt did not speak to claimant again until September 20, 2002. Hunt testified this was the first notice he received that claimant was claiming he suffered a work-related injury. As owner of employer, Hunt testified had claimant notified anyone else in the company of his injury, Hunt would have been informed. During the course of employment, Hunt testified he had seen claimant limp immediately upon standing from a kneeling position.

Chris Schifeling, project manager for employer, testified he spoke to claimant before his trip to Wichita regarding the work claimant would begin on August 12, 2002. Claimant appeared normal and did not appear to limp. Schifeling testified he telephoned claimant on August 11, 2002, to confirm that claimant would indeed be able to work the next day. No one answered the telephone and Schifeling left a voice message. Schifeling testified claimant's wife telephoned on August 12, 2002. According to Schifeling, claimant's wife explained claimant would not be able to work "because he was still out of town. He got hurt and could not drive back."

Kathy Gastineau, claimant's wife, testified claimant did not suffer from knee problems when they married in 2000. Claimant began complaining of knee pain in 2001. Claimant's wife recalled speaking with Schifeling on the telephone but did not recall what she had told him other than that her husband was still in Wichita. Claimant's wife testified that prior to leaving for Wichita, claimant was limping and complaining that his knee was bothering him. She spoke to claimant

after he arrived in Wichita. Claimant relayed he could barely walk because of the pain he was experiencing.

Dr. Hanson testified he first saw claimant on August 28, 2002. Dr. Hanson testified claimant presented with a history of knee pain for approximately one year. Claimant told Dr. Hanson he had been in the floor-covering business for 30 years, and the pain was getting worse. An X-ray of claimant's right knee was performed, and severe arthritis in the medial compartment with loss of the normal valgus alignment and moderal arthritis behind the patella were noted. Dr. Hanson testified he diagnosed claimant with osteoarthritis, medial compartment, and patellofemoral medial compartment. Dr. Hanson prescribed anti-inflammatories, Naprosyn, and an unloader brace. In addition, Dr. Hanson recommended claimant use a cane. Dr. Hanson next saw claimant on October 9, 2002. A magnetic resonance imaging (MRI) was performed, which revealed a medial meniscus tear and arthritis. As a result of these findings, Dr. Hanson testified he performed an arthroscopic partial medial meniscectomy and chondroplasty on October 29, 2002. Surgical findings included a medial meniscus tear, chondromalacia, and arthritis in the median joint and patellofemoral joint. Dr. Hanson testified that after surgery, claimant underwent physical therapy and a course of anti-inflammatories. Dr. Hanson testified claimant did fairly well in therapy but never returned to a normal state. Dr. Hanson last saw claimant on February 20, 2003. He testified claimant was in fair condition on that date. Within a reasonable degree of medical and surgical certainty, Dr. Hanson testified he was of the opinion that claimant's work as a commercial floor layer either contributed to or caused the need for his knee surgery. Similarly, Dr. Hanson was of the opinion that claimant's work contributed or caused the osteoarthritis as well as the meniscus tear in his right knee. Dr. Hanson stated he could not pinpoint a specific time when claimant's meniscus tear occurred but explained that a meniscus tear can be degenerative in nature.

On October 23, 2002, claimant presented to his family physician, Dr. Birge. Because of claimant's chronic high blood pressure, he needed Dr. Birge's clearance to undergo knee surgery. According to Dr. Birge's notes, claimant explained he had experienced chronic knee pain for approximately one year. The remainder of Dr. Birge's records document claimant's hypertension issues and do not mention any complaints regarding claimant's knees. In 1999, Dr. Birge removed fluid from claimant's left knee.

Based on the foregoing evidence and his visual assessment of claimant's credibility, the arbitrator found claimant did not suffer injuries arising out of and in the course of his employment. The

arbitrator noted claimant was able to perform all of his job duties up to his last day of employment with employer. The arbitrator stated something happened to claimant after he left work on August 2, 2002, that dramatically changed his condition, preventing him from being able to walk, drive, or work. In addition, the arbitrator found claimant did not provide proper notice to employer of his alleged accident. Claimant's September 20, 2002, phone call to employer occurred more than 45 days after the onset of his alleged injury.

A majority of the commissioners on the Commission found claimant did sustain accidental injuries in the form of a cumulative knee condition arising out of and in the course of his employment as a flooring installer. The majority noted claimant testified his minor knee pain worsened considerably from August 2001 until August 2002. The majority found the drive to Kansas likely aggravated claimant's condition. Further, the majority noted Dr. Hanson opined that claimant's work more than likely accelerated his arthritis to the extent that treatment was necessary, and the meniscus tear was likely degenerative in nature due to the arthritis in claimant's knee. Employer presented no medical testimony to rebut Dr. Hanson's opinion. Finally, the majority found claimant provided proper notice to employer of his injury. Claimant telephoned Sandy at employer's office on September 20, 2002, 49 days after the injury occurred. The majority noted the employer suffered no prejudice in this delay, particularly in light of Schifeling's conversation with claimant's wife and employer's knowledge that claimant's knee pain had worsened to the point that he could no longer return to work. The Commission awarded claimant $20,461 in medical expenses, TTD in the amount of $500 per week for a period of $16^3/7$ weeks, and $450 per week for a period of 40 weeks, representing 20% loss of use of the right leg. Commissioner Basurto dissented, stating the arbitrator's decision was well-reasoned. Specifically, Commissioner Basurto noted the arbitrator saw each of the witnesses testify and was in the best position to judge their credibility, and it would be illogical of the Commission to disregard the arbitrator's findings. This appeal followed.

Employer argues claimant failed to give any notice of his work-related accident within 45 days of his injury as required by section 6(c) of the Act. 820 ILCS 305/6(c) (West 2004).

The findings of the Commission regarding notice will not be disturbed on review unless they are against the manifest weight of the evidence. *Gano Electric Contracting v. Industrial Comm'n*, 260 Ill. App. 3d 92, 95, 631 N.E.2d 724, 727 (1994). The purpose of the notice requirement of the Act is to enable employers to investigate alleged accidents. *Gano*, 260 Ill. App. 3d at 95, 631 N.E.2d at 727. A claimant

complies with the Act if, within 45 days, the employer possesses the known facts related to the accident. *Gano*, 260 Ill. App. 3d at 96, 631 N.E.2d at 727. The giving of notice under the Act is jurisdictional and a prerequisite of the right to maintain a proceeding under the Act. *Ristow v. Industrial Comm'n*, 39 Ill. 2d 410, 413, 235 N.E.2d 617, 618 (1968); *Silica Sand Transport, Inc. v. Industrial Comm'n*, 197 Ill. App. 3d 640, 651, 554 N.E.2d 734, 742 (1990). However, the legislature has mandated a liberal construction on the issue of notice. *Gano*, 260 Ill. App. 3d at 96, 631 N.E.2d at 727.

The facts concerning injury and notice in *Gano* are easily distinguished from the instant case. In *Gano*, the claimant testified he immediately reported the accident and resulting injury to his foreman. *Gano*, 260 Ill. App. 3d at 96, 631 N.E.2d at 727. A coworker testified he saw the claimant and the foreman involved in a conversation shortly after the accident allegedly occurred, and the claimant was "messing with his shoulder" as he was speaking with the foreman and "had a nasty look on his face like something had happened." *Gano*, 260 Ill. App. 3d at 96, 631 N.E.2d at 727-28. The claimant testified that after speaking to his foreman, he told his coworkers he had injured himself. *Gano*, 260 Ill. App. 3d at 96, 631 N.E.2d at 728. Despite the employer's argument that it did not receive notice of the claimant's injury until he filed his application for adjustment of claim, this court found the Commission's findings as to notice were not against the manifest weight of the evidence. *Gano*, 260 Ill. App. 3d at 96, 631 N.E.2d at 728.

■ In this case, with regard to notice, the Commission found claimant provided employer proper notice of his work-related injury on September 20, 2002. Although this notice occurred 49 days after claimant last worked for employer, the Commission found employer was not prejudiced by the delay, considering Schifeling's telephone conversation with claimant's wife and employer's knowledge that claimant's ongoing knee pain had worsened to the point that he could not return to work. This decision is not against the manifest weight of the evidence.

On August 12, 2002, Schifeling, employer's project manager, spoke to claimant's wife and was informed that claimant was injured and was not able to drive back to Illinois. Claimant testified that in early September, he telephoned Sandy at employer's office and informed her that he was having knee problems that were going to require surgery. Although this notice was not perfect, employer was possessed with the knowledge that claimant had suffered a knee injury that prevented him from returning to work and that surgery would be required. Further, employer could infer from the nature of claimant's injury and

his position as a flooring installer that the injury was work-related. Because some notice was given to employer, it was then incumbent upon employer to show that it was unduly prejudiced. No such argument was made. See *Silica Sand Transport*, 197 Ill. App. 3d at 653, 554 N.E.2d at 743 (finding employer did not meet its burden of proof of demonstrating undue prejudice as it only speculated that it had been prejudiced and did not support its speculation with factual prejudice). In fact, employer presented no medical evidence that claimant's injury was not work-related. However, employer urges this court to adopt the reasoning set forth in three unrelated Commission cases wherein the Commission declined to find proper notice had been given where the employers had not been made aware that the claimants' accidents were work-related. Decisions of the Commission in unrelated cases have no precedential impact on cases before this court. *Young v. Industrial Comm'n*, 248 Ill. App. 3d 876, 881, 619 N.E.2d 773, 777 (1993). In this case, no opposite conclusion is clearly apparent, and therefore, the Commission's findings regarding notice are upheld.

■ Next, employer argues the Commission's decision that claimant suffered from a work-related accident arising out of and in the course of his employment with employer was against the manifest weight of the evidence. Employer argues claimant never complained to Dr. Birge or another doctor of any ongoing knee problems prior to August 2002. Further, employer notes that claimant's coworkers testified they had not noticed claimant limping despite claimant's claims he had been limping for nearly a year. Finally, employer submits that the evidence presented shows claimant was injured out of state.

A reviewing court will not reverse a decision of the Commission unless that decision is contrary to law or its fact determinations are against the manifest weight of the evidence. *Durand v. Industrial Comm'n*, 224 Ill. 2d 53, 64, 862 N.E.2d 918, 924 (2006). It is the province of the Commission to judge the credibility of witnesses, draw reasonable inferences from testimony, and determine the weight to be given testimony. *Elliott v. Industrial Comm'n*, 303 Ill. App. 3d 185, 188, 707 N.E.2d 228, 231 (1999).

Dr. Hanson testified claimant's osteoarthritis and meniscus tear were degenerative in nature and likely caused by or aggravated by his work as a commercial floor layer. The Commission clearly found Dr. Hanson credible and placed great weight on his testimony. Employer did not provide any contradictory medical testimony. Further, claimant testified he experienced pain in his right knee that progressively worsened from August 2001 until August 2002. Claimant's wife testified claimant did not suffer any knee problems when they married in

2000. However, before he left for Wichita, she testified claimant was limping and complaining of pain in his right knee. This court will not overturn the Commission's decision merely because other testimony was presented from which other inferences could have been drawn. See *Gano*, 260 Ill. App. 3d at 95, 631 N.E.2d at 727.

Finally, employer argues we should review our precedent that the Commission is not required to give deference to the arbitrator's findings of credibility. In the recent past, this court has been presented with more than a few cases where the Commission has made credibility findings contrary to those of the arbitrator. It may very well be time to reconsider the Commission's prerogative to determine credibility regardless of the arbitrator's decision.

In *Berry v. Industrial Comm'n*, 99 Ill. 2d 401, 405, 459 N.E.2d 963, 965 (1984), the supreme court stated the Commission "exercises original jurisdiction and is in no way bound by the arbitrator's findings." This court in *Cook v. Industrial Comm'n*, 176 Ill. App. 3d 545, 551-52, 531 N.E.2d 379, 383-84 (1988), acknowledged the holding in *Berry*, stating:

> "In a long line of cases, appellate courts have held that the Commission has original jurisdiction; it may both consider evidence that was presented to its fact-finding agent, the arbitrator, and consider evidence that is first presented to the Commission. [Citations.] The law is similarly well established that the Commission has authority to determine all unsettled questions and is not bound by the arbitrator's findings, even when it merely reviews the evidence presented at arbitration. [Citations.]
>
> In cases where the Commission has rejected the arbitrator's factual findings without receiving any new evidence, it is the function of this court on review to examine the entire record and weigh the evidence to determine whether the factual findings of the Industrial Commission were against the manifest weight of the evidence. [Citation.] While recognizing that the Commission is in no way bound by an arbitrator's decision, we note that the arbitrator's decision is not without legal effect. [Citations.] Further, we note that in performing its role as reviewer of the record, the Commission is at a practical disadvantage as compared to the arbitrator. The arbitrator, having heard the live testimony, is actually in a better position to evaluate that evidence. [Citations.]
>
> Accordingly, in cases where the Commission has rejected the arbitrator's factual findings without receiving any new evidence, we apply an extra degree of scrutiny to the record in determining whether there is sufficient support for the Commission's decision."

Thereafter, several courts disagreed with *Cook*'s reasoning. See *Dillon v. Industrial Comm'n*, 195 Ill. App. 3d 599, 607, 552 N.E.2d

1082, 1087 (1990) (finding "[r]egardless of whether the Commission hears testimony in addition to that heard by the arbitrator, it exercises original jurisdiction and is in no way bound by the arbitrator's findings"); *J&J Transmissions v. Industrial Comm'n*, 243 Ill. App. 3d 692, 700, 612 N.E.2d 877, 882 (1993) (finding *Cook* is an inaccurate statement of the law and citing *Dillon* as controlling); *Hartsfield v. Industrial Comm'n*, 241 Ill. App. 3d 1055, 1060, 610 N.E.2d 702, 706 (1993) (holding the standard announced in *Cook* was not followed by this court); *Boatman v. Industrial Comm'n*, 256 Ill. App. 3d 1070, 1071, 628 N.E.2d 829, 830 (1993) (finding *Cook* has been rejected as an incorrect statement of the law). Although not appropriate in this case, we will consider giving credence to *Cook*, which provides for "an extra degree of scrutiny" to be applied to the record in determining whether there is sufficient support for the Commission's decision, especially when the Commission makes credibility determinations regardless of the arbitrator's findings.

For the foregoing reasons, we confirm the circuit court's judgment.

Affirmed.

HOFFMAN, GROMETER, and HOLDRIDGE, JJ., concur.

JUSTICE DONOVAN, specially concurring:

I concur in the decision to confirm the Commission's decision. I write separately to voice my concern regarding the majority's expression of its willingness to "consider giving credence" to a statement in *Cook*, 176 Ill. App. 3d at 552, 531 N.E.2d at 384, which proposes that the Commission's decisions be subjected to "extra scrutiny" in cases where the Commission has overturned credibility findings of the arbitrator. As is evident from the majority's decision, a review of fixed precedent regarding the Commission's prerogative to decide credibility issues is unnecessary to a disposition of the issues in the case before us. Thus, the discussion in the majority's decision amounts to an advisory statement that will likely spur unhappy litigants to appeal merely because the Commission's findings are at odds with those of the arbitrator, without regard to whether the Commission's findings and conclusions are against the manifest weight of the evidence.

Since *Cook* was decided, numerous appellants have relied on it as authority to support their arguments that the Commission's decisions should be subject to "extra scrutiny" in cases where the Commission has overturned credibility findings of an arbitrator, and this court has largely declined to do so. See *Sleeter v. Industrial Comm'n*, 346 Ill.

App. 3d 781, 784, 805 N.E.2d 1227, 1229 (2004); *Komatsu Dresser Co. v. Industrial Comm'n*, 235 Ill. App. 3d 779, 788-89, 601 N.E.2d 1339, 1345-46 (1992); *Dillon*, 195 Ill. App. 3d at 607-08, 552 N.E.2d at 1087. Moreover, throughout the years, the Illinois Supreme Court has been asked over the years to consider the functions of the arbitrator vis-à-vis the functions of the Commission, and it has consistently held that the Commission exercises original jurisdiction and is in no way bound by the arbitrator's findings. See *Berry*, 99 Ill. 2d at 405, 459 N.E.2d at 965; *Esposito v. Industrial Comm'n*, 12 Ill. 2d 305, 306, 146 N.E.2d 65, 66 (1957); *Garbowicz v. Industrial Comm'n*, 373 Ill. 268, 269-70, 26 N.E.2d 123, 124 (1940).

It is worth noting that the argument that the hearing officer who actually observed the witnesses is in the best position to judge credibility issues is not unique to workers' compensation cases and that such arguments have been uniformly rejected where the responsibilities of fact-finding and decision-making are statutorily conferred on an administrative agency. See, *e.g.*, *Starkey v. Civil Service Comm'n*, 97 Ill. 2d 91, 100-01, 454 N.E.2d 265, 269 (1983); *Caracci v. Edgar*, 160 Ill. App. 3d 892, 896, 513 N.E.2d 932, 935 (1987); *Gregory v. Bernardi*, 125 Ill. App. 3d 376, 380-81, 465 N.E.2d 1052, 1055-56 (1984). The long-standing rule provides that while an agency is required to consider the findings and conclusions of its hearing officer, it is not bound to accept them, and that the agency must make its own decision based on the evidence in the record. *Starkey*, 97 Ill. 2d at 100-01, 454 N.E.2d at 269; *Gregory*, 125 Ill. App. 3d at 380-81, 465 N.E.2d at 1055-56. The rule has been applied even when the findings of fact depend on the credibility of witnesses and the hearing officer, rather than the agency, had the opportunity to observe and to assess the demeanor of the witnesses. *Starkey*, 97 Ill. 2d at 100-01, 454 N.E.2d at 269; *Gregory*, 125 Ill. App. 3d at 380-81, 465 N.E.2d at 1055-56.

I believe it is imprudent to revisit a clearly established precedent where the issue is not necessary to a disposition of the appeal and where the appellant has not established good cause or a novel theory to justify a departure from that precedent. In all other respects, I concur.